(96 App. Div. 284.)

DOEME v. DOEME.

(Supreme Court, Appellate Division, First Department. July 13, 1904.)

1. DIVORCE—"COLLUSION."
     The term "collusion," as used in divorce suits is an agreement between a husband and wife to procure a judgment dissolving the marriage contract, which judgment, if the facts were known, the court would not grant.

2. SAME—EVIDENCE—CONTROVERSIES AS TO PROPERTY.
     Where a divorce was granted on the ground of the husband's adultery, and it was not contended that the wife procured or connived at the commission of such acts, that she had knowledge thereof until a long time after their commission, or that he furnished her with the evidence by which the divorce was obtained, the mere fact that the parties compromised three independent actions brought by the wife for the recovery of

her property in the husband's possession, or on deposit with certain bankers, was insufficient to establish that the divorce was the result of collusion, brought about by coercion.

**3. SAME—PLEADINGS—ADMISSIONS.**

Where defendant in a suit for divorce admitted in his answer that plaintiff was a resident of New York, he was bound by such admission.

**4. SAME—RESIDENCE.**

Code Civ. Proc. § 1756, subd. 4, provides that an action for divorce may be maintained where the offense was committed within the state, and the injured party, when the action was commenced, is a resident of the state. Section 1768 declares that, if a married woman dwells within the state when she commences the action against her husband for divorce, she is deemed to be a resident thereof, though her husband resides elsewhere. *Held*, that where two of the offenses for which a divorce was claimed were committed in New York, and plaintiff, an opera singer, since her marriage had resided the greater part of the time in New York City, where both she and her husband kept bank accounts and rented a safety deposit vault, and in the winter of 1898–99 they returned to that city with the intention of permanently residing there, and, when filling engagements abroad, plaintiff designated her residence as the city of New York, and testified she intended to make her home there, such facts were sufficient to entitle plaintiff to sue in New York.

Appeal from Special Term, New York County.

Action by Lillian Nordica Doeme against Zoltan Doeme. From an order appointing a referee to take evidence and report to the court as to whether an interlocutory judgment for divorce was obtained by fraud and collusion, plaintiff appeals. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, PATTERSON, and O'BRIEN, JJ.

Albert B. Boardman, for appellant.
Theron Davis, for respondent.

McLAUGHLIN, J. This action was brought for an absolute divorce. The complaint alleged that the parties were married on the 27th of May, 1896, and that the plaintiff at all times subsequent thereto, including the date of the commencement of the action, was a resident of the state of New York. The answer admitted the marriage and the residence of the plaintiff, and denied the other material allegations of the complaint. After issue had been joined, by an order duly made, a referee was appointed to hear and determine the issues involved, who, after hearings had, made a report in favor of the plaintiff. Upon this report an interlocutory judgment was entered on the 29th of January, 1904, which, under the statute, entitled the plaintiff to a final judgment dissolving the marriage contract three months thereafter. A few days before the expiration of the three months, the defendant obtained an order to show cause why the interlocutory judgment should not be vacated and declared void on the ground that the same was procured by fraud and collusion, and that the court never had jurisdiction of the parties, and staying the entry of final judgment pending the return of the order to show cause and the determination of the motion. Upon the return of the order to show cause, an order was made sending the matter to a referee to take proof of the allegations of fraud and collusion, and

make a report to the court, and it is from this order that the plaintiff appeals.

I think the order appealed from should be reversed, and the motion denied. There is not in the whole record, so far as I have been able to discover, the statement of any facts from which even an inference can fairly be drawn that the interlocutory judgment is the result of fraud or collusion of either of the parties to the action, or of their respective counsel. "Collusion," as that term is used in matrimonial actions, is an agreement between a husband and wife to procure a judgment dissolving the marriage contract, which judgment, if the facts were known, the court would not grant. It is not even suggested that the acts of adultery charged against the defendant, and which it is proved he committed, were procured to be done by the plaintiff, or that she connived at the commission of such acts, or had any knowledge of them until a long time subsequent to their commission. Nor is it even intimated that the evidence by which such acts were proved was furnished by the defendant, or that it was not sufficient to justify the referee in reaching his conclusion. The testimony of the defendant himself satisfactorily establishes that there was no arrangement whatever between him and the plaintiff by which the acts were committed, or that she had procured the evidence of the commission of such acts through any efforts of his. Indeed, I do not understand that any claim is made, either in the moving papers, or in the brief presented by the respondent's counsel, that there was any collusion, so far as the commission of the offenses is concerned, or that any fraud was practiced upon the court with reference to proving them. What is claimed, in substance, as constituting the collusion, is that at the time of the commencement of this action three other actions were instituted by the plaintiff against the defendant, by which his funds, amounting to upwards of $60,000, were tied up, and he was thereby coerced into consenting to a divorce. A slight consideration of the facts, as well as the defense to the action, demonstrates that the claim is without foundation. The plaintiff is a professional singer, and, out of her earnings since her marriage, has intrusted to the defendant's care, for investment, upwards of $300,000, a portion of which, according to her contention, at the time of the commencement of this action, was held for the defendant by the New Amsterdam National Bank and Strong, Sturgis & Co., both of the city of New York. When she commenced this action, she also commenced one against the defendant and the New Amsterdam Bank to impress a trust upon the amount which it held, another against the defendant and Strong, Sturgis & Co. for a similar purpose, and a third against the defendant for a general accounting. The three actions, at or about the time for trial of this action was had and the interlocutory judgment entered, were settled and discontinued; the plaintiff receiving $20,000, and relinquishing to the defendant all claim to the balance, which amounted to in the neighborhood of $45,000. The defendant claimed that the property held by the New Amsterdam National Bank and Strong, Sturgis & Co. belonged to him, and that the plaintiff had no interest therein. There was thus presented a serious dispute between the parties as to the

right to this property, and it was compromised in the manner above indicated.

It has never before, so far as I know, been claimed that the settlement of financial transactions between a husband and wife at or about the time a divorce is granted is a badge of fraud or collusion, or even a suspicious circumstance, requiring investigation. The court, by its decree, in a majority of actions where a divorce is granted, makes some provision for the support of the wife; but that a husband voluntarily does so, of itself, no more constitutes evidence of collusion than does the court's decree. There is a moral as well as a legal obligation resting upon a husband to support his wife, and, even if she errs, the fact that he sees fit to make provision for her support at the time a divorce is granted cannot deprive him of the right which the statute gives him to dissolve the marriage contract; nor does it furnish ground of suspicion that the judgment is the result of collusion and conspiracy between the parties, or that the court, had that fact been known, would not have granted the judgment. The same rule is equally applicable to the wife. If she has means, and the husband has none, there is no impropriety upon her part in making some provision for his future support and maintenance, however indelicate it may be for him to accept it. In whatever way, therefore, we consider the facts upon which the defendant bases his claim of collusion, it resolves itself into either one of two things—a compromise and settlement of their respective claims to the property held by the New Amsterdam National Bank and Strong, Sturgis & Co., or else a voluntary settlement by the plaintiff upon the defendant of the amount which he received. The defendant himself made an affidavit, which is set out in the opposing papers, to the effect that the settlement of the actions involving the property had nothing whatever to do with this action. He now says that affidavit was not true; in other words, that he then did not tell the truth, but now does. It is apparent from facts which are not in dispute that the interlocutory judgment rendered in this action did not depend upon, nor was it the result of, the settlement of the other actions, and had all of the facts relating to such other actions, including their settlement, been laid before the court at the time the interlocutory judgment was rendered, it would not have changed the result, because, under the proof, the plaintiff was clearly entitled to the decree.

It is also claimed that the plaintiff practiced a fraud upon the court by asserting that she was a resident of the state of New York. As already indicated, the plaintiff alleged in the complaint that she was a resident of this state, and the answer admitted it. It is well settled that a party is bound by the admissions in his pleadings in divorce actions as well as in others. 2 Bishop on Marriage & Divorce, par. 705. It might well be doubted whether, under such circumstances, a court of equity would listen to the assertion of the defendant that his admission was not true. But however this may be, I think the proof satisfactorily established that the plaintiff was a resident of the state of New York at the time the action was commenced. What the defendant claims in this respect is this: He alleges that both parties are opera

singers, and since their marriage have traveled extensively in various countries, including the United States; that, on account of the nature of their occupation, they have no fixed place of abode in any one locality for any great length of time; that he was born in Hungary, and resides in Paris, France; and that the plaintiff never was a resident of New York. No facts are stated from which the court can see that the defendant is a resident of Paris, so that his assertion in this respect is a conclusion of law, and the same is equally true of the allegation that the plaintiff is not a resident of the state of New York. But the facts set out in the papers used in opposition to the motion clearly bring her within the provision of the Code which entitles her to maintain an action in this state. From these papers it appears that the plaintiff was born in Maine, and married at Indianapolis, Ind., in 1896, and since the marriage both parties have resided the greater part of the time in the city of New York; that they have each had bank accounts in that city since 1898, and that a box in a safe deposit vault has since that time been continuously rented in their joint names, in which the plaintiff's securities have been kept; that in the winter of 1898–99 they returned to the city of New York with the intention of permanently residing there; that, when filling an engagement in Munich in the summer of 1903, an announcement had been made by the management describing the plaintiff's residence as London, which the defendant caused to be changed to read as of New York; that the plaintiff has an apartment in the city of New York in which she lives, and she swears when she commenced to reside in such apartment she intended to make it her home.

Subdivision 4 of section 1756 of the Code of Civil Procedure provides than an action for divorce may be maintained where the offense was committed within the state, and the injured party when the action was commenced is a resident of the state. Two of the offenses charged in the complaint were committed in this state, and the referee so found.

Section 1768 of the Code provides that, if a married woman dwells within the state when she commences an action against her husband for divorce, she is deemed a resident thereof, although her husband resides elsewhere. The plaintiff unquestionably was, within the meaning of this section, dwelling within this state when the action was commenced. Gray v. Gray, 143 N. Y. 354, 38 N. E. 301. In the case just cited the Court of Appeals, referring to a similar question, said:

"The plaintiff's petition and the affidavits in support of it state in positive terms that she resided in Brooklyn with her mother when the action was commenced. The fact that she was actually sojourning or dwelling there at the time is nowhere denied. * * * On the contrary, it is perfectly plain, as a matter of fact, that the plaintiff left Philadelphia, where her husband then and still resides, in April, 1903, some months before this suit was commenced, and that since that date she has been residing within this state. * * * It is, no doubt, true that prima facie the domicile of the husband is that of the wife; but it is equally true that in cases where a separation takes place by reason of domestic difficulties, such as are disclosed by this record, the wife may obtain a residence in this state which will enable her to maintain the action. Code, § 1768."

Actual residence can be acquired in a short time. Brinkley v. Brinkley, 50 N. Y. 184, 10 Am. Rep. 460. It satisfactorily appears that prior

to the commencement of this action the plaintiff had formed the intention of residing in this state, and had carried that intention into effect by becoming an actual resident of the state. Residence is a matter of intention. Here the intention was formed and was carried into effect, and there is not a fact suggested but that it was bona fide, or in any way for the purpose of maintaining the action.

After a careful consideration of this record, I am satisfied there is no merit in defendant's application; that it was not made in good faith; that the interlocutory judgment was not obtained by fraud or collusion; and for that reason the order appealed from should be reversed, with $10 costs and disbursements, and the motion to vacate denied, with $10 costs. All concur.