(98 App. Div. 85)

### DODGE v. DODGE (MORSE, Intervener).

(Supreme Court, Appellate Division, First Department. November 18, 1904.)

1. DIVORCE—APPEARANCE—JURISDICTION—PERSONAL SERVICE.

Appearance by an attorney acting under the written direction of the defendant in divorce proceedings gave the court jurisdiction, though defendant had not been personally served with summons.

2. SAME—COLLUSION.

After a divorce was granted a wife, and she had remarried, the divorced husband procured annulment of the decree. Subsequently the person whom the wife had married intervened in the divorce proceedings, and showed that the decree of annulment was based on false evidence, and asked that said decree be vacated. *Held*, that collusion in procuring the original divorce, which would be fatal to this relief, was not shown

---

¶ 1. See Divorce, vol. 17, Cent. Dig. § 267.

by proving an arrangement between the husband and wife to facilitate the divorce proceedings, but could only be shown by proving collusion in procuring or conniving at the acts of adultery for which the divorce was granted.

Appeal from Special Term, New York County.

Action for divorce by Clemence Dodge against Charles F. Dodge, in which Charles W. Morse intervenes. From an order vacating an order annulling a decree of divorce, defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, and LAUGHLIN, JJ.

A. H. Hummel, for appellant.

Edgar L. Fursman, for respondent.

Samuel Untermyer, for respondent intervener.

HATCH, J. The plaintiff and the defendant Dodge intermarried on March 28, 1877. Twenty years later Mrs. Dodge brought an action for an absolute divorce in this court, based upon acts of adultery alleged to have been committed by her husband in Atlanta, Ga. The summons in that action was claimed to have been served by the plaintiff's attorney therein at the Everett House, in the city of New York, upon the defendant Dodge. Thereafter a notice of appearance and an answer were served on behalf of defendant by Mr. Mortimer A. Ruger, an attorney then engaged in practice in the city of New York, who has since died. After the joinder of issue an order of reference was issued upon consent to a referee to hear and determine the issues and report to the court. The reference was executed, a report was made in favor of the plaintiff, the court confirmed the report, and a decree of divorce was granted on March 26, 1896. Thereafter, and on June 18, 1901, Mrs. Dodge, believing that the decree of divorce was in all respects valid, married Charles W. Morse, of the city of New York. On October 20, 1903—more than five years after the decree of divorce, and over three years after the marriage of the plaintiff therein to Morse—the defendant Dodge applied to the Supreme Court to vacate the decree of divorce upon the ground that the summons in the action had never been served upon him, and that he had not authorized Ruger to appear or answer for him in that action. When this motion came on to be heard, a reference was ordered to take proof and report to the court with the opinion of the referee thereon. An exhaustive hearing was had before the referee, wherein the defendant Dodge testified that he was not in the city of New York at the time when the summons was claimed to have been served upon him, that he did not know the attorney Ruger, and that he had never authorized his appearance and answer in his behalf. Other proof was offered tending to corroborate Dodge's testimony, and the referee reported in his favor, recommending an annulment of the decree of divorce. This report was confirmed by the court, and an order entered thereon December 3, 1903, vacating the decree for lack of jurisdiction in the court to pronounce it. Shortly after, the plaintiff in the action commenced an action to

annul her marriage with Morse for the avowed purpose of establishing her innocence in contracting such marriage. This resulted in a decree annulling the marriage on January 4, 1904. Subsequent to these events Morse caused to be instituted an examination into the truthfulness of Dodge's testimony. Sweetser, the plaintiff's attorney in the action, made a search of the deceased attorney Ruger's papers, which had been preserved, and found therein two letters from the defendant Dodge to the attorney, contained in envelopes, one of which purported to be written from Atlanta, Ga., May 2, 1897, and stated that an action of divorce had been brought against him by his wife; that the summons had been served upon him at the Everett House by the plaintiff's attorney; that he did not believe he had any defense to the action; that, if the acts were charged as being committed at Atlanta, he could not defend; and requested the attorney to appear for him in the action. Upon the envelope in which this letter was contained was printed, "The Kimball House, Atlanta, Ga." It was postmarked at that place by stamp on May 2d, at 6 p. m., 1897, and was directed to the attorney. The other letter purported to have been written from Montgomery, Ala., on March 25, 1898, and directed the attorney to expedite the trial in every way, and make no objection to the divorce. This letter was contained in an envelope which had on the upper left-hand corner, "The New Windsor Hotel, opposite Union Depot, Montgomery, Alabama;" and was postmarked on the face of it at Montgomery, Ala., March 26, 5 p. m., 1898, and was directed to the attorney. It appeared that the defendant Dodge was a Pullman car conductor running over a line of road passing through Atlanta, Ga., and Montgomery, Ala. These letters were shown by satisfactory testimony to bear the genuine signature of the defendant Dodge. After discovering this proof, Charles W. Morse made an application at Special Term to be permitted to intervene in the action of Dodge v. Dodge. An order of intervention was granted, and an application was immediately made by him to take proof, and report as to whether Dodge had been served with the summons in the divorce action, and had authorized the appearance of the attorney therein. A reference was ordered, and after an exhaustive inquiry, and after the signing of the letters by Dodge had been indubitably established, the referee reported in favor of upholding the decree. Upon such report an application was made to vacate the former decree annulling the judgment of divorce and reinstating the same. That motion, coming on to be heard, was granted, and the appeal in this case is from the order entered thereon.

It is clear that the position occupied by Charles W. Morse upon discovering the letters written by Dodge required that he immediately intervene for the purpose of establishing the innocence of his wife in contracting the marriage and vindicating her character as well as his own. These steps were taken promptly upon discovery of the facts, and the purpose which he thus sought to accomplish ought not to be defeated by any consideration short of an overwhelming necessity. There is some doubt as to whether Dodge was or was not personally served with the summons, but this is

not controlling. By the appearance of an attorney at his direction, given over his signature, the court acquired jurisdiction to render the decree. The proof was abundant to show the commission of some of the offenses charged against him in the complaint, and clearly entitled the plaintiff therein to the decree awarded in her favor.

It was suggested upon this appeal that the parties in the action of divorce were guilty of collusion. If by collusion is meant that Mrs. Dodge and her attorney, by arrangement with Dodge, took steps to facilitate the proceedings, there would be force in the suggestion; but the collusion that would be fatal here to a valid decree is collusion in procuring or conniving at the act or acts of adultery. It is not pretended that the plaintiff had any knowledge, collusive or otherwise, of the offenses committed by her husband at Atlanta, Ga. He was then residing there and she in New York, and there is no room for the suggestion that she colluded with him to commit the offense. Doeme v. Doeme, 96 App. Div. 285, 89 N. Y. Supp. 215. The parties who have since that decree innocently intermarried are entitled to every consideration to the protection of the court in the vindication of their innocence and integrity.

The order which has been granted was clearly right, and it should therefore be affirmed, with $10 costs and disbursements. All concur; VAN BRUNT, P. J., in result only.