LOLA REPPERT, Appellee, v. GUS REPPERT, Appellant.

No. 40932.

18

March 8, 1932.

L. S. Forrest, for appellee.

Parrish, Cohen, Guthrie & Watters, for appellant.

De Graff, J.—The original petition filed in this case was subject to motion of the defendant to divide the petition into counts, which motion was sustained, and in compliance with the order entered, an amended and substituted petition was filed by the plaintiff in four counts. It is therefore necessary to understand the plaintiff's claims and the issues in this cause as set forth in the four counts in the substituted petition.

It is undisputed that the plaintiff (Lola Reppert) and defendant (Gus Reppert) intermarried on the 24th day of September, 1928, and that a decree of divorce on the petition of the defendant herein was entered by the District Court in and for Polk County on May 7, 1929, in which decree it is recited that the court being fully advised in the premises finds and determines "that the equities of this cause are with the plaintiff (defendant in this cause) and that he is entitled to an absolute decree of divorce from the defendant" (plaintiff in the instant cause), and further decreed that the plaintiff (Gus Reppert) pay to the defendant (Lola Reppert) "the sum of $150 per month for a period of 12 months as alimony" for the support of the defendant Lola Reppert in said divorce action. The record discloses that the defendant in the divorce action received and ac-

cepted her monthly alimony for a period of 12 months for her support as per the decree of divorce entered of record. It is now the contention and claim of Lola Reppert, the plaintiff in the instant case, that she was the wife of the instant defendant prior to the divorce action and has been the wife of said defendant ever since, regardless of the decree of divorce entered as aforesaid. In the light of her present claims under her substituted petition in the instant case, we deem it necessary to analyze the four counts of her amended and substituted petition filed in the instant case on the 2nd day of January, 1931.

I. Count I of her petition is based on the theory that she was and is the lawful wife of the defendant, and the prayer in Count I is that the divorce decree heretofore noted be cancelled, declared void, and held for naught.

The record discloses that the plaintiff, Gus Reppert, in said divorce action caused to be served upon the defendant, Lola Reppert, an original notice, which she accepted, and acknowledged receipt of a copy thereof. In her acceptance of service of said notice she signed and wrote thereon the following:

"And do hereby enter my appearance in the above cause and consent that said cause may come on for hearing at any time convenient to the court during the May, 1929, term thereof; and I do hereby waive the reporting of said proceedings."

This was all done in Des Moines Township, Polk County, Iowa, the 25th day of April, 1929.

It is alleged in Count I of her substituted petition that the notice aforesaid to her was a part of an oral agreement entered, into between plaintiff and defendant that the defendant herein should obtain a decree of divorce against the plaintiff merely as "a formal matter," and that the divorce should make no difference between them; that the instant plaintiff in signing said acceptance did not know the import thereof, and relied upon the representation of the defendant and was lulled into security and thereby prevented from seeking legal advice or appearing in said action; that they remained as husband and wife; that during said continuation of said relation a child was born to them March 25, 1930; that during said relationship, especially since the birth of the child aforesaid, the defendant Gus Rep-

pert has been guilty of such cruel and inhuman treatment toward the plaintiff as to endanger her health, and "therefore imperil her life."

It may be observed first that the burden of proof to sustain the plaintiff's allegation was upon the plaintiff. The record discloses that the plaintiff 'is college-trained and that she majored while in college in English. It may not, therefore, be said that plaintiff did not understand the English language and the full import of the notice served on her at the time she accepted service thereof in the manner heretofore stated. There is no basis, in the light of the evidence, for plaintiff to now claim that the divorce decree was entered by the court simply as "a formal matter." There was a specific denial in the answer of the defendant that such an agreement as claimed by the plaintiff was ever entered into, and the trial court so found. It is said in the argument of plaintiff that on the 2nd day of the May term, when a divorce decree was signed by the court pursuant to the notice served, "there was no testimony taken and there was no reporter's transcript ever filed. in the Clerk's office showing that any trial whatever was had." It surely is not intended by plaintiff in making such a statement to charge the District Court which granted the divorce in question with participation in any fraud or collusion in granting the decree of divorce between the parties.

The petition of the plaintiff does not make a claim for the establishment of the paternity of her child, except in so far as that problem arises in connection with her claim of common-law marriage and no previous divorce. The essence of her prayer in Count I is for the cancellation of the divorce decree. The trial court properly held that the decree was legal and valid, and that there was no common-law marriage between the plaintiff and defendant.

A divorce decree, even tho obtained by fraud, is voidable, and not void. A divorce decree obtained through alleged collusion cannot be attacked on that ground by either party. In the divorce action the District Court in and for Polk County, where both parties resided, had jurisdiction of the subject matter, including the divorce, alimony, etc. Section 10468, Code, 1927. In the divorce action the trial court proceeded to a decree, and necessarily and actually found that it had jurisdiction

of both the parties and the subject matter involved. The plaintiff, Gus Reppert, in said action, therefore, by himself and by some corroborating witnesses must have satisfied the court that both of the parties at the time were residents of Polk County. The court could not, under this record, have found otherwise. It is also undisputed that permanent alimony was decreed in favor of the defendant against the plaintiff Gus Reppert. In the instant action she seeks to avoid this situation by asserting that the decree was procured by fraud and collusion.

The record shows that the plaintiff in the divorce action faithfully carried out the provisions of the Polk County decree. He has made all payments to her as therein provided, and she has accepted same, and by so doing she has estopped herself, and she cannot now be heard to gainsay the validity of the Polk County decree. Estoppel was pleaded by the defendant in the instant case. In Ellis v. White, 61 Iowa 644, the determination of the case rests upon the validity of the divorce proceedings, and it was held that, if the court had jurisdiction, the decree cut off the plaintiff's right, which in that case was the right of plaintiff to her distributive share or dower. It is said in Newcomer v. Newcomer, 199 Iowa 290, l. c. 294:

"Again, plaintiff alleges, with reference to the Tama County proceeding, 'that all of the same was done with the assistance and connivance of the defendant, at his instance, suggestion, and request,' thus asserting that the decree was procured through collusion between appellant and appellee, and by a commission of fraud on the Tama County court. That the courts will not countenance an attack upon such a decree by either party is fully elucidated in Ferry v. Ferry, 9 Wash. 239 (37 Pac. 431), where it states: 'It is enough to say that the authorities are decidedly against such a proposition, and that courts cannot be used in that way.' (Citing cases.) * * * Her proceedings herein, therefore, do not appeal to the conscience of the chancellor, as she has no equity whatever in her case."

It is quite the universal rule of law that an attack upon a judgment upon the ground of fraud must be made within a reasonable time after the discovery of the fraud. This is the well recognized legal principle in Iowa.

"Generally speaking, the fraud which renders a judgment void, as distinguished from voidable, goes to the method of acquiring jurisdiction." Mahoney v. State Ins. Co., 133 Iowa 570, l. c. 577.

In the case at bar the plaintiff by her own admissions must have known at the time of her acceptance of the original notice, what she claims to now know, and upon which the prayer in Count I is predicated. It must be remembered that the instant action is not a reopening of the original divorce action, but is an attempt in an original proceeding to set aside and cancel the decree of divorce. There is no suggestion anywhere in the case at bar, either in pleadings or proof, that the jurisdiction of the Polk County Court was fraudulently obtained; but even if there had been collusion between plaintiff and defendant in the procurement of the divorce decree, the instant plaintiff must be viewed as a party to the fraud upon the court. She failed to come into equity with clean hands, and it is well settled that a party to a collusive decree may not attack it upon the ground alleged by plaintiff. This court so held in Newcomer v. Newcomer, supra. The plaintiff herein fails to distinguish (1) between void and voidable decrees; (2) between decrees void because of jurisdictional defects and decrees void because of fraud upon the court to which both parties contribute. In Hamilton v. McNeill, 150 Iowa 470, l. c. 479, it is said:

"If, therefore, a defendant thus willingly obtain his freedom from the marriage bond, either by collusion or by silence at the trial, there is much reason why the adverse findings of the decree against him should bind him for all time. Such a rule would tend at least to deter the evil practice. On the other hand, if he may temporarily assent to falsehood either by collusion or silence in order to enable a decree of divorce to be obtained, and then afterwards in his freedom from the bond, repudiate to his own advantage the facts upon which the decree of dissolution was entered, such a rule can tend only to the great reproach of the administration of the law."

As bearing on the involved proposition it is said in Doeme v. Doeme, 96 App. Div. 284, 89 N. Y. Supp. 215:

"* * * an agreement between a husband and wife to pro-

cure a judgment dissolving the marriage contract, which judgment, if the facts were known, the court would not grant.''

Before there can be collusion there must be an agreement between the parties. There is no such claim by the plaintiff herein, nor any evidence of such fact, offered by the plaintiff at the time the decree of divorce was entered by the District Court. The desire of either or both parties to obtain a divorce does not of itself constitute collusion, and must be distinguished from it. McCauley v. McCauley, 103 Atl. 20 (N. J. Eq.) Not every agreement between the parties respecting a divorce is collusive: for instance, an agreement respecting alimony or property settlement may be properly made, and if approved by the trial court constitutes a valid part of the decree entered. A divorce decree ''is not denounced by law as immoral or against public policy.'' Hudson v. Hudson, 162 S. W. 1062 (Mo. App.). A mere suspicion does not justify the denial of the validity of a divorce decree, but the evidence of collusion must be fairly conclusive. Blinn v. Blinn, 113 Iowa 83. The plaintiff herein testified:

''Along about April (prior to the commencement of the divorce action), or sometime along there, we talked over several propositions. I don't just exactly know where we were towards a settlement.''

The record discloses that the plaintiff and the defendant talked matters over between themselves relative to a divorce and agreed to a settlement governing alimony that was later embodied in the decree of divorce. It is our conclusion that the divorce decree was valid, and consequently the plaintiff's prayer to set aside and hold for naught the divorce decree must be denied. The trial court ruled correctly Count I.

II. We now turn to Count II. In this count plaintiff alleges the same preliminary matters as in Count I, and her prayer is that she be awarded separate maintenance from the defendant sufficient to maintain herself and her child separately, and that the plaintiff be given the full and absolute care and custody of the child. It is apparent from the prayer in this count that plaintiff contends that she is still the wife of the defendant. It follows from what we have heretofore said that

the divorce decree was valid, and consequently the bonds of matrimony between plaintiff and defendant ceased to exist. The question then arises, Was the plaintiff the common-law wife of the defendant at the time of the matter referred to in Count II? Unlawful sexual relations, if such there were, between plaintiff and defendant subsequent to entry of a valid divorce decree did not constitute *per se* a common-law marriage. No rational explanation can be given why plaintiff and defendant should proceed to be divorced intending to remain as husband and wife after the divorce decree was entered. Neither cohabitation nor general repute that two parties are husband and wife are sufficient or significant as circumstantial evidence of the intention of the parties.

"* * * the fundamental question is whether their minds have met in mutual consent to the status of marriage * * *." In re Estate of Boyington, 157 Iowa 467.

In the instant case it is conclusively shown that there is no evidence of any ceremonial marriage between them. There is no evidence of general repute that they were living together as husband and wife. Reppert never recognized the plaintiff as his wife, nor did he ever give her any financial support except the alimony decreed to her by the trial court, which, as pointed out, she continued to accept for twelve months after the decree of divorce was entered.

"Marriage is a civil contract, requiring the consent of the parties capable of entering into other contracts." Section 10427, Code, 1927.

Mutuality of consent means just what it means in ordinary civil contracts. Brisbin v. Huntington, 128 Iowa 166; Lockwood v. Lockwood, 189 N. W. 871 (Mich.).

"But neither such intention nor consent can be inferred from cohabitation alone." Brisbin v. Huntington, supra.

The parties in the instant case were never reputed among their acquaintances as married; never treated each other as husband and wife, nor spoke to each other as such in the presence of others; nor did the defendant ever recognize the child as his, but in fact maintained that it was not his, and so pleaded in

his answer. When the alleged agreement was made as claimed and as testified to by plaintiff, Reppert was incapable under the law of entering into such an agreement, if such were made; and it becomes immaterial for the purpose of creating a common-law marriage, whether we view the alleged oral agreement to be *per verba de praesenti* or *per verba de futuro*. The plaintiff's statement, as shown by the testimony, that "I have told them (her family) that everything is going on just the same," and that she said to the defendant, "Now Gus, I feel that you are my husband and I am your wife as tho nothing had happened," are not sufficient to establish a common-law relationship, especially when these statements are flatly denied by the defendant. Even assuming that the statements were uttered, they fail to show a present contract of marriage. In fact the statements recognize that a divorce had been granted. Cohabitation between them "just as tho they were married" does not constitute marriage, but the relationship between them was and remains meretricious. The fact that plaintiff accepted alimony for twelve months after the divorce decree was entered tends to establish the fact that she did not consider herself as wife, and there is no evidence of other contributions to her support by the defendant. In the decree entered in the instant case this language is found:

"2. The court further finds that no common-law marriage was entered into, formed or existing by and between the plaintiff herein, Lola Reppert, and the defendant, Gus Reppert, since the granting of the decree of divorce hereinbefore referred to, which decree of divorce was granted on the 7th day of May, 1929, and the court further finds that there was no promise of marriage made or entered into between the plaintiff and defendant since the granting of said divorce decree, May 7, 1929, and that the defendant is not now nor has he been the common-law husband of the plaintiff. 3. The court further finds that the plaintiff is not entitled to separate maintenance from the defendant."

It is sufficient to state that the trial court ruled correctly on these propositions and issues.

III. In Count III the plaintiff alleges the material matters alleged in Counts I and II, but emphasizes the fact of

the birth of a child to her, alleging that the defendant acknowledged its paternity, but that the defendant now refuses to support the said child, and "at times insinuates or denies to others that he is the father of the child, and refuses to support it or plaintiff." Her prayer in Count III is that the defendant be declared in law to be the father of the minor child, and that he be ordered to support said child and the child be declared to be legitimate and to have been born in lawful wedlock, and that the defendant be enjoined from stating that he is not the father of said child.

Such a prayer does not afford the basis of equitable relief. This action is not brought by the child or by the parent as its next friend, or by its legal guardian. This is an action prosecuted by the plaintiff in her own individual right. The only right of the plaintiff was a personal right as against the putative father to have him so declared for her own satisfaction. No claim is made by the plaintiff for moneys expended by her on behalf of her child.

It is alleged by plaintiff in this count that she has no other adequate remedy than this action to establish the paternity of the child. This she did not prove. She had an adequate remedy in law. The ordinary processes of the law are fully competent to redress the claimed right of the plaintiff. The petition in this case as to the matters now under consideration, assuming that all of the allegations as to paternity are true, did not contain any matters cognizable in equity. There is no occasion for us in the instant case to state the precise limit of equity jurisprudence. It is usually said in textbooks and decisions that equity jurisdiction does not exist where a plain, adequate, and complete remedy can be obtained at law. There is no claim here that defendant has infringed or impinged on plaintiff's personal or property rights. The trial court gave no judgment for support furnished by the plaintiff to the child in the past. All that the court did was to declare a status to exist which was not proved, which a court of equity, under the instant facts, had no right to do.

An adequate remedy existed at law to establish the paternity of said child. Chapter 544-A1, Code, 1927. In such a case the action is commenced upon relation of the state against the putative father. Section 12667-a28, Code, 1927. The trial shall

be by jury "if either party demands a jury, otherwise by the court, and shall be conducted as in other civil cases." Section 12667ṛa27. Such an action is quasi criminal in character. In this connection, it must be remembered that the child is not a party to plaintiff's action, which action was commenced by the plaintiff herein in her own name for personal judgment, as though the child was born in lawful wedlock, which she alleges. When we have taken out of plaintiff's case her claim for voiding of the divorce decree and for separate maintenance under a common-law marriage, we have taken away all grounds for equitable relief.

The trial court was in error as to its judgment and decree entered on Count III.

■ IV. Count IV reiterates the allegations contained in the foregoing counts, and her prayer is identical with the relief prayed for in the prior counts. However, it includes a prayer that she be allowed temporary alimony for the maintenance and support of herself and her child in the sum of $150 per month, and that she be allowed temporary suit money to enable her to maintain this suit, and that her attorney be allowed temporary attorney's fees in the sum of $........., and that upon final hearing she may have a decree against the defendant for permanent alimony for her maintenance and support and for costs of this action, including a reasonable attorney's fee for plaintiff's attorney.

It must be borne in mind that the plaintiff's prayer for alimony, attorney's fees, and costs was prayed for by plaintiff on the basis and theory that she is and always has been the wife of the defendant. The facts show, and the trial court so found, that she was not, at the time she commenced this action, the wife of said defendant, either statutory or common-law. Therefore, the prayer for alimony, attorney's fees, and costs has no place in this action. Incidentally, it may be stated further that there is no definite or specific showing by the evidence offered on behalf of plaintiff as to the wealth of the defendant or his ability to pay, upon which to base a money judgment as prayed for by the plaintiff against the defendant. This, however, becomes immaterial by reason of our holding that the plaintiff was not the wife of the defendant when her action was commenced.

■■ A motion to strike appellee's abstract was filed by the

defendant-appellant, which motion was ordered submitted with this cause. Notice of defendant's appeal was filed on the 30th day of January, 1931. Thereafter the appellee served her notice of appeal. It is further shown that on the 21st day of October, 1930, plaintiff-appellee filed an amendment to her petition. On the 28th day of October, 1930, the defendant-appellant filed his motion to strike all of the allegations in the amendment to her petition for the reason that said allegations were merely a pleading of evidence. This motion to strike was sustained by the trial court December 12, 1930, and it ordered all the allegations stricken from the amendment to the petition. On the 14th day of October, 1930, plaintiff-appellee filed her motion for temporary support money, attorney's fees, and suit money. On the 17th day of October, 1930, the defendant-appellant filed his resistance to said motion, and on the 12th day of December, 1930, the court overruled the plaintiff-appellee's said motion. Subsequently to the appeal of appellant and the filing of his abstract, the plaintiff-appellee, without conforming to statutory provisions or the rules of this court, filed a denial of defendant-appellant's abstract of record and filed her abstract of record. Her denial does not specifically point out the defects alleged to exist in appellant's abstract, which denial contains the following statement:

"Appellee offers her abstract as full and complete and correct and suggests that by using it there will be a great deal of labor saved on both the part of the court and the attorneys on both sides."

On October 28, 1931, the defendant-appellant filed in this court his motion to strike appellee's abstract, which motion was ordered by this court submitted with this cause. There is no showing by the appellee that there are omitted from appellant's abstract any matters which are material to any of the issues presented in the four counts of the substituted petition which is now before us. It is true that in the filed resistance by the appellee to the motion now before us, a certain affidavit is filed and signed by the attorney for the appellee. There is also a counter affidavit filed by the attorney for the appellant, which affidavits are strictly at variance as to what was said and purported to be agreed upon prior to the filing of the abstract by plaintiff-ap-

pellee. These matters are not contained in any writing, and consequently this court will not determine the veracity of the said attorneys respectively in regard to their oral dispute as set forth in the affidavits. We said in Brown v. Farmers Loan & Trust Co., 109 Iowa 440:

"Understandings arrived at from conversation between counsel cannot be considered, unless reduced to writing and filed in the case, or consented to in open court."

In Farmers St. Sav. Bank v. Miles, 206 Iowa 766, l. c. 769, it is said:

"We do not deem it necessary to determine the conflict in sworn statement involving the instant dispute and misunderstanding between counsel of the respective parties in suit. It is to be regretted that such a condition arises between such estimable and trustworthy gentlemen."

We therefore in this case decline to settle the dispute as presented by the affidavits, respectively, attached to the motion to strike the appellee's abstract which was filed in the instant case. It is sufficient to state that the appellant's abstract is sufficient for this court to determine the issues presented by the four counts heretofore set out, and as contained in appellee's substituted petition. Appellant's motion to strike, filed in this court in this case, is, therefore, sustained.

For the reason heretofore pointed out in this opinion the trial court was in error, and the judgment and decree entered is, therefore, reversed.

WAGNER, C. J., and EVANS, ALBERT, KINDIG, MORLING, and GRIMM, JJ., concur.

STEVENS and FAVILLE, JJ., not participating.