**In re the MARRIAGE OF Tambra Lynn STOGDILL and Ronald Wayne Stogdill.**

**Upon the Petition of Tambra Lynn Stogdill, Appellee,**

**And Concerning Ronald Wayne Stogdill, Appellant.**

**No. 87–165.**

Supreme Court of Iowa.

Aug. 17, 1988.

Rehearing Denied Oct. 13, 1988.

Thomas J. McCann of Foxhoven & McCann, Des Moines, for appellee.

Emil Trott, Jr., and Griff Wodtke of Barrett & Trott, Des Moines, for appellant.

Considered by McGIVERIN, C.J., and LARSON, CARTER, LAVORATO, and ANDREASEN, JJ.

ANDREASEN, Justice.

The primary issue in this case is whether the trial court can address the question of paternity in an action for dissolution of marriage after it held the petitioner failed to establish a common law marriage. The district court held that it could address the paternity issue. The court also awarded child support and attorney fees. We affirm.

### I. Background Facts and Proceedings.

On July 17, 1984, Tambra Stogdill filed a verified petition for dissolution of marriage pursuant to Iowa Code chapter 598 (1983). She alleged a common law marriage with Ronald Stogdill. She asked the court to dissolve their marriage; divide their property; award her custody of the child she was expecting; and award temporary and permanent child support, suit money, and attorney fees.

Ronald filed his answer to the petition on August 6, 1984. He denied the existence of a common law marriage with Tambra and also denied that he was the father of the child she was expecting. Ronald did not file a jury demand or a request for a

separate trial of the paternity issue. Tambra gave birth to a daughter, Ashley Marie, on August 22, 1984.

By agreement, the parties provided blood samples for testing by the Minneapolis War Memorial Blood Bank, Inc., in May of 1985. The results of the blood testing were reported to the parties in June of 1985. Blood test results established a 99.99% likelihood that Ronald was the father of Ashley.

In October of 1985, Tambra made application to the court to allow the testimony of Dr. H.F. Polesky, of Minneapolis, to be taken by telephone. After agreement by the parties, the court ordered that telephone depositions be taken of Dr. Polesky. When Dr. Polesky's facilities would not accommodate a deposition by telephone, arrangements were made to take the deposition in person. Although prior notice had been given, Ronald and his counsel were not present when Dr. Polesky's testimony was taken. This prompted Tambra to file a motion for temporary attorney fees asking for the fees and expenses incurred in securing the testimony of Dr. Polesky. The testimony of Dr. Polesky and his report were later received into evidence by the court.

In February of 1986, Tambra filed a motion to consolidate the dissolution of marriage issue and the issue of paternity. Ronald's resistance urged he was entitled to a jury trial on the issue of paternity and that the paternity issue should be tried as a law matter before a jury. On July 22, 1986, the court granted Tambra's motion to consolidate and set the case for trial.

Pretrial affidavits filed by Tambra reflected that her only income sources were Aid for Dependent Children and food stamps. Ronald's pretrial affidavit listed a net income of between $12,000 and $13,000 from the United Parcel Service and $3000 from carpet work.

This case was tried to the court on October 8, 1986. The evidence established the parties lived together from January 1980 to February 1983, when Tambra moved to Kansas to go to school. Tambra returned to Iowa in October of 1983 and resumed her romantic relationship with Ronald. Tambra and Ronald filed joint income tax returns for 1981 and 1982. They also purchased "promise rings" and planned to be married in a church wedding. Ronald admitted he had sexual intercourse with Tambra in December of 1983, the time period when Ashley was conceived. The testimony and report of Dr. Polesky concerning the blood tests were received into evidence by the court.

The court found that Tambra had failed to establish the essential elements of a common law marriage by clear, consistent, and convincing evidence. Tambra does not appeal from this holding. The court also found that Ronald was the father of Ashley. The court's decree awarded custody of Ashley to Tambra and ordered Ronald to pay child support of $100 per week. It also ordered him to pay court costs and temporary attorney fees of $1500. On appeal, Ronald asserts the paternity issue should have been tried as a law issue to a jury. Ronald also claims that the amount ordered as child support was excessive and the court lacked authority to award temporary attorney fees.

II. *Scope of Review.*

■ Under its equitable powers, the trial court held it could determine all issues raised by the petition and answer. There is no dispute that a court of equity has the power to determine questions of child custody and support. *See* Iowa Code chapters 252A, 598 & 598A (1987); *see also Mason v. Hall,* 419 N.W.2d 367, 369 (Iowa 1988); Iowa Code §§ 675.24 (1987) (support) & 675.40 (1987) (custody and visitation). Our first issue is whether a court exercising general equitable powers in a dissolution of a common law marriage under Iowa Code chapter 598 has the ability to determine the paternity issue if the court determines that there was no common law marriage.

An action for dissolution of marriage is an equitable proceeding; our review is de novo. Iowa Code § 598.3 (1987); Iowa R.App.P. 4.

III. *Paternity Issues.*

██ The issue of paternity can be determined in cases tried at law under Iowa Code chapter 675. However, proceedings to establish paternity under chapter 675 are not exclusive. *See* Iowa Code § 675.7 (1987). Paternity can be determined in equity under Iowa Code chapter 252A. *See* Iowa Code § 252A (1987) (child support and custody); *Greenstreet v. Clark,* 239 N.W. 2d 143, 147 (Iowa 1976). This is because the issue of paternity is material to the determination of custody and child support. Thus, a jury trial of the paternity issue may be allowed in a traditional paternity action brought under chapter 675 and yet denied in a proceeding for custody and child support under chapter 252A. *See State ex rel. Bishop v. Travis,* 306 N.W.2d 733, 736 (Iowa 1981).

The issue of paternity may also arise in a dissolution of marriage proceeding under Iowa Code chapter 598. *See In re Evans,* 267 N.W.2d 48, 50–51 (Iowa 1978) (approved submission of paternity issue in a modification proceeding where paternity was not litigated in the original dissolution action); *see also In re Schneckloth,* 320 N.W.2d 535, 536 (Iowa 1982). The court also has authority under Iowa Code section 598.21 to determine whether the husband is the father. *See In re Schneckloth,* 320 N.W.2d at 536. In a determination of paternity under chapter 598, there is no entitlement to a jury trial. This review of Iowa law demonstrates that the issue of paternity may properly arise in either a law or equity action, and the alleged father may be entitled to a jury trial in some situations but not in others.

Ronald argues that the trial court should not have consolidated the common law marriage issue with the paternity issue. He urges that the paternity issue should be tried separately as a law action to a jury as provided by Iowa Code section 675.18.

██ We have recognized that a defendant has no right to a trial by jury of law issues raised in the answer to an action properly brought in equity. Once equity has obtained jurisdiction of a controversy the court will determine all questions material or necessary to accomplish full and complete justice between the parties, even though in doing so the court may be required to pass upon certain matters ordinarily cognizable at law. *See Greenstreet v. Clark,* 239 N.W.2d 143, 148 (Iowa 1976) (quoting *Grandon v. Ellingson,* 259 Iowa 514, 518, 144 N.W.2d 898, 901 (1966)). The paternity issue may be a proper issue for determination in an action for dissolution of marriage under chapter 598. We must determine if the paternity issue is properly considered in a dissolution action under chapter 598 when the court determines that there was not a common law marriage.

██ In *Reppert v. Reppert,* 214 Iowa 17, 26, 241 N.W. 487, 492 (1932), we held the court had no equitable jurisdiction to determine paternity and award child support where the plaintiff had alleged, but failed to prove, a common law marriage. We found the statutory paternity and child support provisions of the Iowa Code provided a plain, adequate and complete remedy at law. *See id.* at 26–27, 241 N.W.2d at 492 (citing Iowa Code ch. 544–A1 (1927) (now chapter 675)). When the claim for divorce of a common law marriage was taken out of the plaintiff's case, all grounds for equitable relief were removed. *See* 214 Iowa at 26–27, 241 N.W. at 492.

In *Metten v. Benge,* 366 N.W.2d 577 (Iowa 1985), we again considered the court's jurisdiction to award child custody and support in an equity action between unmarried cohabitants. As in *Reppert,* the petitioner had commenced a divorce or dissolution action. On the morning of trial the petitioner amended her petition and alleged the parties had never entered into a statutory or common law marriage. She asked for relief as permitted by chapter 598 and the general equitable powers of the court. *Id.* at 578. The respondent moved to dismiss because the action was for a dissolution of marriage, even though it was agreed there was no marriage. The trial court overruled the motion and entered a decree dividing property and awarding child custody and support. We affirmed the decree, holding the allegations relating to custody, support, and equitable

division of property were sufficient to confer equitable jurisdiction upon the district court. *Id.* at 579.

Here the dissolution of marriage petition requests the court to grant Tambra custody of the child, to equitably divide the property, to order Ronald to pay temporary and permanent child support, to allow temporary attorney fees, and to grant "such other just and equitable relief as may be appropriate." The petition was not amended to specifically request general equity powers as in *Metten.* Ronald objected to the consolidation of the common law marriage issue with the paternity, custody, support, and property division issues. At trial, he also objected to evidence relating to the paternity, custody, support, and property division issues. Ronald urged that if there was no common law marriage, the district court would have no jurisdiction over the paternity issue.

Paternity may be determined by the court in an equitable proceeding for dissolution of marriage under chapter 598. *See In re Schneckloth,* 320 N.W.2d 535, 536 (1982). We have also recognized that the district court has general equitable jurisdiction to enter a decree dividing property and awarding child custody and support between unmarried cohabitants. *See id.; see also Metten,* 366 N.W.2d at 579. We conclude that this general equitable jurisdiction also includes the determination of the paternity issue in this case. Ronald's motion for separate trial on the paternity issue and request for jury trial was premature. Under the pleadings at that time, he was not entitled to either a separate trial or a jury trial on the paternity issue. The court did not err in its pretrial ruling allowing consolidation of the paternity and common law marriage issues. After trial, the court found the paternity issue was properly before it under its general equity powers. The court concluded it had discretion to retain equity jurisdiction to determine the paternity issue, notwithstanding the fact there was no common law marriage. We agree.

We conclude the trial court had general equitable jurisdiction to adjudicate the paternity issue as a logical preliminary issue before determining child custody and support. The court thus made a complete adjudication of all matters properly presented and placed in issue. The court's decree and judgment upon these issues granted the relief requested and thus avoided separate and unnecessary litigation. The evidence in the record is sufficient to establish that Ronald is the father of Ashley and that custody would properly be placed with Tambra.

### IV.  *Child Support.*

██ The court awarded the sum of $100 per week as child support for Ashley. It found Ronald's net income was over $16,000 per year and that Tambra was receiving Aid for Dependent Children payments and food stamps totaling $441 per month. Under the court's property division Ronald retained the personal property and real estate in his possession. The amount awarded by the court for child support is equitable under the record.

### V.  *Attorney Fees.*

██ The trial court allowed Tambra to recover $1500 as temporary attorney fees. Ronald asserts that attorney fees cannot be allowed under the provisions of Iowa Code section 598.11 (1987) unless a common law marriage is established. In *In Re Winegard,* 257 N.W.2d 609, 615 (Iowa 1977), we stated:

> If the proof be such as to make out a fair presumption of the fact of the existence of the marital relationship, then it is sufficient to warrant the court in granting an order for temporary attorney fees.

Temporary attorney fees are allowable under chapter 598 if there is sufficient proof to make a fair presumption of the existence of a marriage. Here the evidence was sufficient to support the award of temporary attorney fees, even though the court eventually found that there was no common law marriage.

We also find the amount of temporary attorney fees awarded to be reasonable. The record reflects over $1100 of the fees were incurred in securing the expert testi-

mony of Dr. Polesky relating to the blood grouping tests. Much of this expense could have been avoided by the cooperation of Ronald and his attorney. Under these circumstances, we find the award of temporary attorney fees to be reasonable.

VI. *Disposition.*

The trial court properly exercised its equitable jurisdiction in determining paternity, child custody and support. We affirm the trial court's decree and judgment.

AFFIRMED.