# CHASE *v.* THE UNITED STATES.

STATUTORY CONSTRUCTION; ADULTERY; HUSBAND AND WIFE; EVIDENCE.

1. A statute which is amendatory of previous statutes must in the absence of restrictive terms or something in the nature of the subject-matter that would indicate such restriction, be taken to have the same general and extensive application as the statutes to which it is an amendment, except as otherwise expressly provided.

2. The provision of the act of Congress of March 3, 1887, ch. 397 (24 Stat. 635), defining and prescribing punishment for adultery, is applicable to this District and is in force here, although some of the provisions of that act may be inapplicable to this District.

3. Under the first section of that act, making a husband a competent witness for or against his wife unless he objects to testifying, but

providing that neither husband nor wife shall be permitted to testify to communications made to each other during the marriage relation, the testimony of the husband as to the fact of marriage is admissible.

No. 511.   Submitted October 8, 1895.   Decided November 4, 1895.

HEARING on an appeal by two defendants indicted for and convicted of adultery.   *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. Alexander Wolf* and *Mr. D. W. Baker* for the appellant:

1. The act of March 3, 1887, under which this indictment was found, is not in force in this District.   Taking the law as a unit it could not be applied to the District of Columbia, and the general sections and provisions of the law must follow the destiny and fate of the particular provisions which designate the evils which they are to co-operate in suppressing.   The cast of the law determines the extent and scope of each part of the law, and the parts of the law cannot be greater than the whole.

The mere fact that the act here considered is an amendment to a law held by this court to be law here, is no argument against this contention, as it is a well-known fact that general laws can by amendment be made local and particular in their nature either by express provisions in the amendment or by implication.   *Durousseau* v. *United States,* 6 Cranch, 314.

The act shows on its face the intention of Congress to further deal with the Mormon question and regulate and punish certain crimes prevalent in the country of the Mormons and not elsewhere.   It is a sound principle that such a construction ought to be put upon a statute as may best answer the intention which the lawmakers had in view, and that is sometimes to be collected from the cause and necessity of making it; at other times from other circumstances. Sedg. Const. and Stat. Law, 232; *Keith* v. *Quinney,* 1 Oreg.

366 ; *Oregon* v. *Carr*, 6 Oreg. 136 ; *Platt* v. *Railroad Co.*, 99 U. S. 48.

This statute was fully considered by the Supreme Court of the District in the case of the *United States* v. *Crawford*, 6 Mackey, 319, and after a full consideration of the question, it held that this act was not in effect in the District ; and this court, in holding section 5352 to be in effect here, was careful not to disturb the Crawford decision. *Knight* v. *United States*, 6 App. D. C. 1.

2. The court erred in permitting the husband of the defendant to testify in this case, the charge being adultery and not one of the crimes referred to in the act. The act says bigamy, polygamy, and unlawful cohabitation. Bigamy and polygamy have well-known meanings and cannot be said to have any relation to adultery, which, if it be an offence, is a specific, independent offence well defined by act of Congress. Unlawful cohabitation has also a common law and statutory meaning. The act of Congress of March 22, 1882, defining unlawful cohabitation, has been fully considered by the Supreme Court of the United States, and the majority of the court held it was not necessary in order to convict a person of the offence under the statute to show that there had been sexual intercourse. *Cannon* v. *United States*, 116 U. S. 55. Occasional acts of adultery are not punishable as unlawful cohabitation. *Clouser* v. *Clopper*, 59 Ind. 548 ; *State* v. *Crowner*, 56 Mo. 147. And in looking at the statute creating the offence of unlawful cohabitation and adultery it will be seen that unlawful cohabitation is a misdemeanor, while adultery is a felony. It is a safe and necessary rule to construe criminal statutes so as to include what is fairly and reasonably within the scope of the language, but not to include what is not within the language, merely because it partakes of a similar mischievous quality. *In re McDonough*, 49 Fed. Rep. 360; *People* v. *Reynolds*, 71 Mich. 343 ; *United States* v. *Morris*, 14 Pet. 46 ; *The State* v. *Lowell*, 23 Iowa, 304.

*Mr. A. A. Birney*, U. S. Attorney for the District of Columbia, and *Mr. Tracy L. Jeffords*, Assistant Attorney, for the United States.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

The appellants in this case were indicted, tried, convicted and sentenced, in the court below, for the commission of the crime of adultery with each other. The indictment charges that the appellant, Charles H. Chase, had carnal knowledge of the body of the appellant, Mary Jackson, otherwise called Mary White, and the latter had carnal knowledge of the body of the said Chase, she, the said Mary, being then and there a married woman, and having a lawful husband alive, and not being then and there the wife of the said Charles H. Chase, the said Charles H. Chase and the said Mary Jackson not being then and there lawfully married to each other ; against the form of the statute in such case made and provided, &c.

The defendants, instead of pleading to the indictment, moved to quash the same, and assigned the following reasons therefor :

1st. That the indictment did not state an offence punishable under the laws of the District of Columbia.

2d. That the crime of adultery, as charged in the indictment, is not punishable under the laws of the District of Columbia.

3d. That the act of Congress of March 3d, 1887, entitled an act to amend an act entitled an act to amend section 5352 of the Revised Statutes of the United States, in reference to bigamy, and for other purposes, approved March 22d, 1882, is not in force in the District of Columbia ; and,

4th. That the indictment does not show any specific act or acts on the part of the defendants that would constitute the crime of adultery.

This motion to quash was overruled, and the defendants

were put to trial on the plea of not guilty.    At the close of the evidence the defendants asked the court to instruct the jury to render a verdict of acquittal, upon the ground that the prosecution had failed to make out a case against them upon the evidence.    This request was refused, and a verdict of guilty was rendered as to both of the defendants.    There was also an exception taken by the defendants to the ruling of the court upon a question of evidence. The rulings brought here for review are those made upon the motion to quash, the request for an instruction to acquit, and upon the question of evidence, to which exception was taken.

As we have seen, it is not alleged in the indictments that the defendant Chase was, at the time of committing the offence, a married man, but he is alleged to have committed adultery with the other defendant, Mary Jackson, *alias* White, she then being a married woman.    It is supposed, and so contended on the part of the defendants, that such an indictment is only allowable under the provisions of the act of Congress of March 3d, 1887, ch. 397, and that such statute is not in force in this District; and the principal question presented on this appeal is, whether that act of Congress, or any part of it material to this case, is applicable and in force in this District?

Before that act of Congress was passed, the only statutory law in force in this District for the punishment of the crime of adultery, was an old colonial statute of Maryland, passed in the year 1715, ch. 27, entitled "An act for the punishing the offences of adultery and fornication;" the latter offence, by subsequent statute, having been withdrawn from the operation of this original act of 1715.    By the third section of this act of 1715, it was provided, " that every person or persons that shall commit adultery, and shall be thereof convicted, either by confession or verdict of twelve men, in the provincial or any of the county courts, shall be fined, by the justices, &c., three pounds current money, or twelve hundred pounds of tobacco, to

the King's Majesty, &c., towards defraying county charges."
The penalty of three pounds here prescribed, according to
the rating of the old Maryland currency, at $2.66⅔ per
pound, reduced to Federal currency, would amount to $8.
And by the fourth section of the act it was provided, that
in case the offenders, or any of them, should not have
wherewith to pay the fine imposed, " then they should be
adjudged to suffer corporal punishment, by whipping upon
his or their bare bodies till the blood do appear, so many
stripes (not exceeding thirty-nine) as the justices shall ad-
judge."   1 Kilty, Laws of Md. 1715.

This old statute is not adapted to the present state of
society, and does not furnish an adequate restraint upon
the commission of the crime intended to be suppressed.
Moreover, the act, as will be observed, furnishes no defini-
tion of what shall constitute adultery, or as between what
parties adultery could be committed.   The common law of
England prescribed no fine or penalty for the crime of
adultery, but the crime was left for its definition and pun-
ishment to the ecclesiastical law as administered by the
ecclesiastical courts of that country ; and for a definition,
in the absence of statutory definition, we must resort to
that law.   2 Whart. Cr. Law, secs. 2643, 2651.

In section 2647 of his work on Criminal Law (7th ed.)
Dr. Wharton says :

" By those States which hold the offence is not cogniz-
able at common law by the common law courts, the sub-
ject has been generally covered by legislation.   And as
in many cases this legislation consists simply in making
' adultery ' penal, the question has been constantly arising
as to what adultery is.   Unfortunately, in seeking for the
international common law on this point, the courts have
sometimes gone back to the old Roman law, sometimes to
the Jewish, each of which was superseded by the canon
law, which, as we have seen, at the time of the coloniza-
tion of America, was the common law of Christendom.
But whatever may have been the processes of reasoning,

we find, in the United States, the following several defini-
tions propounded : First, that which has just been stated,
that *adultery consists in the sexual connection between a man
and a woman ; one of whom is lawfully married to a third
person.* In such case both participants are guilty of adultery.

" Second, *that it consists in sexual connection by a married
person with one who is not such married person's husband or
wife.*

" Third, *that it consists in sexual intercourse with a mar-
ried woman by one not her husband,* in which case both the
married woman and her paramour are guilty ; this being the
view of the Roman law."

It is in accordance with the definitions thus stated by
Wharton, that the Congress of the United States, in the
act of March 3, 1887, ch. 397, have made adultery a crime,
and punishable by prosecution in the courts of the United
States, with a modification in favor of an unmarried woman.
That act, as we have seen, is entitled "An act to amend an
act entitled 'An act to amend section 5352 of the Revised
Statutes of the United States, in reference to bigamy, and
other purposes,' approved March 22, 1882 ; " and by sec-
tion 3 it is provided, " That whoever commits adultery shall
be punished by imprisonment in the penitentiary not ex-
ceeding three years ; and when the act is committed be-
tween a married woman and a man who is unmarried, both
parties to such act shall be deemed guilty of adultery ; and
when such act is committed between a married man and a
woman who is unmarried, the man shall be deemed guilty
of adultery."

In determining the question whether the provision of
the statute just quoted applies to this District, it becomes
necessary to have reference to the Constitution, and the
statutes specially relating to the District of Columbia. By
the Constitution of the United States, Art. 1, sec. 8, it is
declared that Congress shall have power to exercise exclu-
sive legislation in all cases whatsoever over this District ;
and by the Revised Statutes of the United States, relating

to the District of Columbia, sec. 93, it is provided that the Constitution and *all the laws* of the United States, *which are not locally inapplicable*, shall have the same force and effect within this District as elsewhere within the United States."

Section 5352 of the Revised Statutes, under title "Crimes," and the act of March 22d, 1882, amendatory of section 5352, relating to the crime of bigamy, and to which the act of March 3d, 1887, was passed as an amendment, were both of general application to all Territories, or *other places over which the United States have exclusive jurisdiction.* The act of 1887, being amendatory of the previous statutes, must, in the absence of restrictive terms, or something in the nature of the subject-matter that would indicate such restriction, be taken to have the same general and extensive application as the statutes to which it is an amendment, except as otherwise expressly provided. This amendatory act of 1887, ch. 397, contains twenty-seven sections, many of which, by their restrictive terms, have only a local application. But the first five and the tenth sections of the act are wholly without restrictions, either in terms or by reason of the nature of the subject-matter, and are as general in their application as language can make them ; and it would be a most unwarrantable construction to hold that they apply only to some particular Territories, or to Territories exclusive of this District. There is nothing in the language, and certainly nothing in the subject-matter of these sections, to require such restriction. It is true, there are several of the sections that may well admit of doubt, whether they were intended to apply to all the Territories of the United States, or only to the Territory of Utah ; but no such doubt or ambiguity exists in regard to the first five and the tenth sections of the act. They apply to all places over which the United States have exclusive jurisdiction. Nor is there anything unusual or remarkable in the fact that we find embraced in the same act provisions of general and unlimited application, and provisions of a special or local character. The legislation of Congress abounds with such instances.

Supposing, then, the six sections of the act to which we have referred to be of general application, as we think they are, is there anything in the subject-matter of those sections that would or does make them *locally inapplicable* to this District ? If so, we may reasonably conclude, notwithstanding the general terms employed, that Congress did not intend that the act should apply to this District.

The first section of the act provides for making competent as witnesses, though not compellable to testify, husband or wife, in prosecutions for bigamy, or unlawful cohabitation. The second section provides for the issuing of attachments for witnesses, and compelling their attendance in such prosecutions, and the taking of their recognizances ; the third for the punishment for adultery ; the fourth for the punishment for incest ; and the fifth for the punishment for fornication. And the tenth section provides, " that nothing in this act shall be held to prevent the proof of marriage, whether lawful or unlawful, by any evidence now legally admissible for that purpose."

Now, it cannot, with any propriety or reason, be said, that there is anything in these provisions of the statutes that is locally inapplicable to this District. The crimes of bigamy, unlawful cohabitation, adultery, incest and fornication, are no less offensive violations of decency here than elsewhere ; and they are not less the proper subjects of prevention and punishment by law in this District than in the Territories, or other places over which the United States have exclusive jurisdiction. It is not reasonable or fair to impute to Congress an intention to treat these crimes as gross offences against decency and morality in all places over which the United States have exclusive jurisdiction, save and except the District of Columbia—the seat of the capital city of the nation—and where, without this statute, there is no adequate law to restrain and punish the commission of these degrading and demoralizing crimes against society. In our judgment, no fair construction will justify the exclusion of this District from the benefits of the pro-

visions of the sections of the statute to which we have re-
ferred.   Indeed, by force and effect of the declaration of
Congress, that *all the laws* of the United States *which are
not locally inapplicable*, shall have the same force and effect
within this District as elsewhere within the United States,
these provisions of the act of 1887, ch. 397, are made ap-
plicable here.   That construction of this declaratory pro-
vision was fully adopted and applied by the Supreme Court
of the United States, in the case of *Page* v. *Burnstine*, 102
U. S. 664.

In that case, the question was as to the applicability of
a provision of the general evidence act, contained in sec-
tion 858 of the Revised Statutes of the United States to
modify and enlarge the exception to the general rule pre-
scribed by the special evidence act, passed solely for the
District of Columbia; and it was held that the general
statute for the United States at large applied to the courts
of the District of Columbia as fully as to the circuit and
district courts of the United States.   And in delivering the
opinion of the court, Mr. Justice HARLAN said:

" The legal effect of the declaration that all the laws of
the United States, not locally inapplicable, should have the
same force and effect within this District as elsewhere within
the United States, was to import into, or add to, the special
act of July 2, 1864, relating to the law of evidence in the
District, the exception, created by the act of March 3,
1865, to the general statutory rule, excluding parties as
witnesses.   This is manifestly so, unless it be that a statute
affecting the competency of parties as witnesses in actions
by or against personal representatives or guardians, in which
judgment may be rendered for or against them, is ' locally
inapplicable' to this District.   But such a position cannot
be maintained consistently with sound reason.   The same
considerations of public policy which would require the
enforcement of such a statute as that of March 3, 1865,
in the circuit and district courts of the United States, with-
out regard to the laws of the respective States on the same

subject, would suggest its application in the administration of justice in the courts of the District. Congress no doubt felt that the general rule of permitting parties to testify on their own motion put the representatives of deceased persons at a great disadvantage, if those proceeding against them by suit could, on their own motion, testify as to transactions with or statements by, the decedent. To remedy that evil, the act of March 3, 1865, was passed, and it should not be held locally inapplicable to this District, simply because it enlarges the exceptions to the general rule established by the special act of July 2, 1864."

We are of opinion, therefore, that the provision of the act of Congress of March 3, 1887, defining, and prescribing punishment for adultery, and under which the indictment in this case was found, is applicable to this District ; and that the court below committed no error in overruling the motion to quash the indictment—the several reasons assigned in support of such motion being wholly insufficient. And there being ample evidence, as to the guilt of the parties, to be considered by the jury, there was no error in refusing to direct a verdict of acquittal.

With respect to the other question presented by the bill of exceptions taken by the defendants, we also think the court below committed no error. The question presented is as to the competency of the husband of the female defendant to prove the fact of marriage, and that he and his wife had lived separate for a long time. The court allowed the witness to testify, he offering no objection thereto. In thus ruling, the court would seem to have been fully justified by the provision of the first section of the act of March 3, 1887. By that section the husband is made competent as a witness, for or against the wife, unless he objects to giving evidence ; and being competent as a witness, he could prove the fact of marriage ; though the section provides, "that such witness shall not be permitted to testify as to any statement or communication made by either husband or wife to each other, during the existence of the marriage

relation, deemed confidential at common law." The first
section of the act, read in connection with the tenth section,
would seem to render it quite clear that there was no error
in the ruling of the court on this question.

It follows that the judgment appealed from must be
affirmed, and it is so ordered.

*Judgment affirmed.*

*Mr. W. E. Poulton* for the appellant.

*Mr. A. A. Birney,* U. S. Attorney for the District of Co-
lumbia, and *Mr. Tracy L. Jeffords,* Assistant Attorney, for
the United States.