ALFRED L. VON TERSCH, JR., PETITIONER *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 3458–64, 204–65.   Filed January 20, 1967.

Alfred L. von Tersch, Jr., pro se.
*Glenn L. Strong*, for the respondent.

BRUCE, *Judge:* The respondent determined deficiencies in the income taxes of the petitioner in these consolidated cases as follows:

| Docket No. | Petitioner | Taxable years | Deficiency |
|---|---|---|---|
| 204–65 | Alfred L. von Tersch, Jr | 1962 | $93. 28 |
| 3458–64 | do | 1963 | 504. 36 |

The petitioner claims an overpayment in income tax for the year 1963 in the amount of $175.22. The issues presented are: (1) Whether petitioner was entitled to file a joint Federal income tax return for 1962; (2) whether petitioner is entitled to a personal exemption deduction for Judy Karn von Tersch for either 1962 or 1963; and (3) whether petitioner is entitled to dependency deductions for the two minor children of Judy Karn von Tersch for either 1962 or 1963.

### FINDINGS OF FACT

The facts have been partially stipulated and the stipulation together with the exhibits attached thereto are incorporated herein by this reference.

The petitioner, Alfred L. von Tersch, Jr., is presently a resident of Lafayette, Ind. During the taxable years involved he resided in Clarinda, Iowa. He filed Federal individual income tax returns (Form 1040) for the taxable years 1962 and 1963 with the district director of internal revenue at Des Moines, Iowa. The return for 1962 purports to be a joint return for "Alfred L. & Judy A. von Tersch" and is signed "Alfred L. von Tersch—2/6/63—Judy von Tersch—2/6/63." The return for 1963 purports to be that of a mar-

ried man filing separately. It was signed by "Alfred L. von Tersch, Jr.," on January 30, 1964.

Prior to 1962 Judy Karn von Tersch (hereinafter sometimes referred to as Judy) was married to Larry R. Karn and two children were born of that marriage—Randall Ray, born October 24, 1957, and Laurie Ann, born March 12, 1959. Judy and the children lived with Larry until sometime in May 1962, when Judy and Larry separated. Judy took the children with her. In September 1962 Judy and Larry became reconciled and she and the children again lived with him until about the end of October 1962, when Judy and Larry again separated. Thereafter and during the remainder of 1962 Judy and her two children shared an apartment in Waterloo, Iowa, with a woman friend and her child. Judy was employed for approximately 7 months during the year 1962.[1]

Shortly after their first separation in May 1962, Judy A. Karn filed an action for a divorce from Larry R. Karn in the District Court for Story County, Iowa. On November 30, 1962, the District Court for Story County, Iowa, entered a decree granting Judy A. Karn a divorce from Larry R. Karn, pertinent portions of which are as follows:

IT IS THEREFORE FURTHER ORDERED, ADJUDGED AND DECREED by the Court, that said plaintiff be and she is hereby divorced from the defendant, and that the bonds of matrimony now existing between them be and the same are hereby set aside and held for naught, and that said plaintiff be and she is hereby restored to all rights and privileges of an unmarried person.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED by the Court, that neither party to this action shall remarry within a period of one year from the date of this decree.

Custody of the two minor children was granted to Judy. The decree further provided that the defendant should pay certain specified monthly amounts for child support and for alimony, such payments to be made "through the office of the Clerk of the Story County District Court at Nevada, Iowa." No such payments were ever made by Larry. He did, however, furnish some financial assistance to Judy and the children in 1962 after they moved into the apartment and also in 1963 after Judy ceased living with petitioner.

Petitioner first met Judy in August 1962, when she and Larry were separated. They were married on May 11, 1963, in Lincoln, Nebr. Prior thereto, from about the end of January to the end of March 1963, Judy and the two children lived with petitioner in Clarinda, Iowa. In March 1963 Judy obtained a job in Fort Dodge, Iowa, and worked

---

[1] Presumably Judy earned $2,448.14 during the year 1962, this being the second of two items shown on the "Joint Return" as salary or wages of the taxpayers. Respondent so states on brief and petitioner has not disputed the statement. However, the W-2 Forms required to be filed with the return are not included as a part of the exhibit (Exhibit A) filed herein and there was no testimony or other evidence showing the amount Judy received as wages or salary during the year 1962.

there 3 or 4 weeks earning approximately $150 to $170. After their marriage on May 11, 1963, Judy and her two children lived with petitioner until May 31, 1963, when Judy left petitioner. They did not live with petitioner at any time during the remainder of 1963.

On June 14, 1963, Judy filed an action for a divorce from petitioner in the District Court for Greene County, Iowa, based in general on grounds of alleged cruel and inhuman treatment. Paragraph 5 of the petition filed by Judy alleged that "the plaintiff and the defendant were married at Lincoln, Nebraska on May 11, 1963." This allegation was admitted in the answer filed by the defendant (petitioner herein). On August 10, 1963, and in connection with the divorce suit, the defendant (petitioner herein) was ordered to pay the plaintiff (Judy) $150 per month beginning on August 7, 1963, as temporary alimony and also to pay certain litigation expenses and attorney fees, all such sums to be paid to the clerk of the court. According to the clerk's records, the defendant (petitioner herein) did not pay any of the temporary alimony during the year 1963. On December 30, 1963, the District Court for Greene County, Iowa, entered its findings and decree wherein it was adjudged that the plaintiff (Judy) was not entitled to a divorce.

Judy was subsequently granted a divorce from the petitioner by the State court in Pocatello, Idaho, on November 20, 1964.[2] The record herein does not show that the divorce decree granted in Idaho was ever reversed or set aside.

During the two periods aggregating approximately 3 months that Judy and the two children lived with petitioner in 1963, he paid the usual expenses of maintaining a home for them, such as rent and food bills. During the remainder of 1963, after Judy and the children left him on May 31, 1963, petitioner did not furnish Judy or the children any monetary support. He did purchase a coat for Laurie, a pair of slacks and a shirt for Randall, some Christmas toys for each of the children, and a small gift for Judy. Certain hospital or medical expenses incurred by Judy in 1963 were paid by the insurance company with which petitioner carried a family coverage type of policy and on which he paid premiums of approximately $30 per month. The amount of such premiums applicable to the insurance coverage of Judy or the children is not shown.

During the period from May 31 to the end of 1963, Judy and the children received an undisclosed amount of support from her parents and her former husband, Larry Karn. They also received approximately $90 per month from the State of Iowa through its Aid to De-

---

[2] Appeal proceedings from that decree were apparently stayed until the defendant Alfred L. von Tersch (petitioner herein) complied with certain orders relating to payment of expenses.

pendent Children program. The number of months such aid was received is not shown.

On each of the Federal income tax returns filed by petitioner for 1962 and 1963, he claimed a $600 personal exemption for himself and for Judy, and $600 dependency exemption for each of Judy's two children, Randall and Laurie.

Petitioner and Judy were not husband and wife on December 31, 1962, either by reason of a formal marriage ceremony or a common-law marriage.

Judy's two children, Randall and Laurie, were not related to petitioner, either by blood or marriage on December 31, 1962; nor were they members of his household or have as their principal place of abode the home of the petitioner during the taxable year 1962, or the entire year 1963.

Judy had gross income at least to the extent of $150 to $170 in the taxable year 1963.

Petitioner has failed to establish that he furnished more than one-half the support of Judy's two children, Randall and Laurie, in the taxable year 1963.

OPINION

Prior to consideration of the issues presented we deem it appropriate to dispose of petitioner's objection to the reception of any testimony from Judy, called as a witness by respondent, on the ground that she was his wife and therefore not competent to testify against him. Ruling on the objection was reserved, with leave to the parties to brief the question, and the testimony was received subject to the objection.

Petitioner and Judy were married in a civil ceremony in Nebraska on May 11, 1963. Petitioner agreed with her preliminary testimony that she obtained a divorce from him in Pocatello, Idaho, on November 20, 1964, but claimed that the court later ordered the divorce stayed. He tendered in evidence a copy of a court order, which was not received, over respondent's objection, for want of authentication. Before ruling on the latter objection, however, the Court determined from examination of the tendered document that it did not purport to stay the divorce, but merely stayed *an appeal* from the divorce decree pending payment of certain court costs. There is no evidence herein that the divorce decree rendered November 20, 1964, was ever set aside or reversed. Accordingly, Judy was not the wife of petitioner at the time she testified in 1966.

Under section 7453 of the Internal Revenue Code of 1954 and its predecessor, section 1111 of the 1939 Code, the Tax Court is bound by the rules of evidence applicable in trials without a jury in the United States District Court for the District of Columbia. Rule 31 (a), Rules of Practice, Tax Court of the United States; *Masters v. Commissioner,*

243 F. 2d 335 (C.A. 3, 1957), affirming 25 T.C. 1093. Under section 14-306 of the D.C. Code (1961), a wife is competent to testify against her husband in a civil suit except as to confidential communications made during the marriage. Judy's testimony did not involve any confidential communications made during her marriage to petitioner, but related only to her support, where and with whom she had lived and worked, and where and when she had married petitioner and been divorced. We hold that she was competent to testify to these matters and accordingly overrule petitioner's objection. Cf. *Chase* v. *United States*, 7 App. D.C. 149.

For petitioner to have been entitled to file a joint Federal income tax return with Judy for the taxable year 1962, he must have been married to her as of the close of such year on December 31, 1962. Sec. 6013(a) and (d)(1)(A), I.R.C. 1954.[3] Petitioner and Judy were married in a civil ceremony in Lincoln, Nebr., on May 11, 1963. Petitioner claims, however, that he and Judy entered into a common-law marriage prior to December 31, 1962.

For the purpose of establishing eligibility to file a joint Federal income tax return, the marital status of the two individuals is to be determined under the laws of the State of their residence. See Rev. Rul. 58-66, 1958-1 C.B. 60. Petitioner and Judy were both residents of Iowa during the periods in question, and the State of Iowa recognizes common-law marriage. *Coleman* v. *Graves*, 255 Iowa 396, 122 N.W. 2d 853 (1963); *In re Long's Estate*, 251 Iowa 1042, 102 N.W. 2d 76 (1960); *In re Boyington's Estate*, 157 Iowa 467, 137 N.W. 949 (1912). However, for a common-law marriage to be recognized in Iowa, the Iowa courts have declared that there must be an "Intent and agreement in praesenti, as to marriage, on the part of both parties, together with continuous cohabitation and public declaration that they are husband and wife"; that the one asserting the claims has the burden of proving all the elements of relationship as to marriage and that the claim of such marriage is to be regarded with suspicion and closely scrutinized. *In re Long's Estate, supra*. The Iowa courts have also held that mere proof of cohabitation is not sufficient to establish common-law marriage, *State* v. *Grimes*, 215 Iowa 1287, 247 N.W. 664 (1933), and that "where cohabitation is in its beginning illicit, affirmative proof of a subsequent present intention to change such relation into a legitimate relation of husband and wife is essential to establish a common law

---

[3] SEC. 6013. JOINT RETURNS OF INCOME TAX BY HUSBAND AND WIFE.

(a) JOINT RETURNS.—A husband and wife may make a single return jointly of income taxes under subtitle A, even though one of the spouses has neither gross income nor deductions, except as provided below:

\* \* \* \* \* \* \*

(d) DEFINITIONS.—For purposes of this section—

(1) the status as husband and wife of two individuals having taxable years beginning on the same day shall be determined—

(A) if both have the same taxable year—as of the close of such year; and

marriage," *In re Boyington's Estate, supra.* See also *Rupert* v. *Rupert*, 214 Iowa 17, 241 N.W. 487.

In our opinion petitioner has failed to establish all of the elements which the Supreme Court of Iowa has declared are essential to establish a common-law marriage, in the year 1962. In the first place, if we accept as true his testimony that he began living with Judy in November 1962 (a fact which Judy denied), it is obvious that their cohabitation at that time was illicit, since Judy was not divorced from Larry Karn until November 30, 1962. In addition to their cohabitation being illicit in its beginning, it is also evident that Judy was not legally qualified to enter into a marriage *in the State of Iowa*, with any one other than her former husband, prior to December 1, 1963. Section 598.17 of the Iowa Code Annotated, provides:

In every case in which a divorce is decreed, neither party shall marry again within a year from the date of the filing of said decree unless permission to do so is granted by the court in such decree. Nothing herein contained shall prevent the persons divorced from remarrying each other.

The divorce decree entered by the District Court for Story County, Iowa, on November 30, 1962, specifically provided that neither party to that action should remarry within 1 year from the date of the decree. Since both Judy and petitioner were residents of Iowa at the time petitioner claims the common-law marriage took place, they were bound by the laws of Iowa and Judy was prohibited from entering into a marriage with petitioner in the State of Iowa, either formal or common-law, prior to December 1, 1963. That they were aware of this prohibition is evident from the fact that they went to Nebraska to get married on May 11, 1963.

The above facts and circumstances are sufficient of themselves, without taking into consideration the testimony of Judy to which petitioner objected at the trial, to support our conclusion that petitioner and Judy were not husband and wife at the close of the taxable year 1962. In addition, we might point out that petitioner, who had the burden to do so, has offered no evidence establishing (1) a present intention and agreement on the part of both petitioner and Judy to enter into a common-law marriage at any time during the year 1962; (2) that their cohabitation was continuous; or (3) that they held themselves out or *publicly declared* that they were husband and wife, in 1962. Whatever their relationship may have been in 1962, it was clearly not the legal relationship of a husband and wife. Nor for that matter, in view of the prohibition against marriage imposed upon Judy by the Iowa statute and the divorce decree of November 30, 1962, was their relationship the legal relationship of a husband and wife, at least prior to their formal marriage in Nebraska on May 11, 1963.

In view of our finding that petitioner and Judy were not husband and wife in 1962, it follows that petitioner was not entitled to file a

joint Federal income tax return with Judy for the taxable year 1962. We so hold. Sec. 6013(a) and (d)(1)(A), I.R.C. 1954. Since she was not his spouse in 1962, it further follows, and we so hold, that petitioner was not entitled to a personal exemption for Judy for the taxable year 1962.

Petitioner's entitlement to a personal exemption for Judy for 1963 is controlled by section 151 (a) and (b)[4] which allows a taxpayer who files a separate return an additional exemption for his spouse, *if* the spouse has *no gross income* of her own and is not the dependent of another taxpayer. Petitioner and Judy, though separated at the time, were husband and wife at the close of the taxable year 1963. However, inasmuch as he filed a separate return for that year and Judy *had gross income* of her own, petitioner was not entitled to a personal exemption deduction for her for the taxable year 1963.

This brings us to the question whether petitioner was entitled to dependency deductions for the two children of Judy for 1962 or for 1963. The applicable statutes and regulations here are sections 151(e) (1)(A) and 152(a) (1), (2), and (9),[5] and Income Tax Regs., section 1.152-1(b).[6]

Our findings of fact dispose of this question for both years. Petitioner is not the natural father of Judy's two children. Nor was he their stepfather in 1962, since he and Judy were not married in 1962.

---

[4] SEC. 151. ALLOWANCE OF DEDUCTIONS FOR PERSONAL EXEMPTIONS.

(a) ALLOWANCE OF DEDUCTIONS.—In the case of an individual, the exemptions provided by this section shall be allowed as deductions in computing taxable income.

(b) TAXPAYER AND SPOUSE.—An exemption of $600 for the taxpayer; and an additional exemption of $600 for the spouse of the taxpayer if a separate return is made by the taxpayer, and if the spouse, for the calendar year in which the taxable year of the taxpayer begins, has no gross income and is not the dependent of another taxpayer.

[5] SEC. 151. ALLOWANCE OF DEDUCTIONS FOR PERSONAL EXEMPTIONS.

(e) ADDITIONAL EXEMPTION FOR DEPENDENTS.—

(1) IN GENERAL.—An exemption of $600 for each dependent (as defined in section 152)—

(A) whose gross income for the calendar year in which the taxable year of the taxpayer begins is less than $600, or

SEC. 152. DEPENDENT DEFINED.

(a) GENERAL DEFINITION.—For purposes of this subtitle, the term "dependent" means any of the following individuals over half of whose support, for the calendar year in which the taxable year of the taxpayer begins, was received from the taxpayer (or is treated under subsection (c) as received from the taxpayer):

(1) A son or daughter of the taxpayer, or a descendant of either,

(2) A stepson or stepdaughter of the taxpayer,

\*        \*        \*        \*        \*        \*

(9) An individual (other than an individual who at any time during the taxable year was the spouse, determined without regard to section 153, of the taxpayer) who, for the taxable year of the taxpayer, has as his principal place of abode the home of the taxpayer and is a member of the taxpayer's household, or

[6] Income Tax Regs., Sec. 1.152-1. General definition of a dependent.

(b) Section 152(a)(9) applies to any individual (other than an individual who at any time during the taxable year was the spouse, determined without regard to section 153, of the taxpayer) who lives with the taxpayer and is a member of the taxpayer's household during the entire taxable year of the taxpayer. An individual is not a member of the taxpayer's household if at any time during the taxable year of the taxpayer the relationship between such individual and the taxpayer is in violation of local law. It is not necessary under section 152(a)(9) that the dependent be related to the taxpayer. \* \* \*

Nor were the children dependents of petitioner under the provisions of section 152(a)(9), since they were not members of his household or have as their principal place of abode the home of the petitioner during the year 1962. Accordingly peitioner was not entitled to dependency deductions for the two children in the taxable year 1962, under the provisions of sections 151(e)(1)(A) and 152(a)(1), (2) or (9).

As to the taxable year 1963, although the children became stepchildren of the petitioner after his marriage with Judy on May 11, 1963, petitioner has failed to establish that he furnished more than one-half of their support for the year 1963. Furthermore, according to his own testimony, the children were not members of his household and did not have as their principal place of abode the home of the petitioner for the *entire* taxable year 1963, as required by section 152(a)(9). Income Tax Regs., sec. 1.152–1(b); *Trowbridge* v. *Commissioner*, 268 F. 2d 208 (C.A. 9), affirming 30 T.C. 879. Accordingly, petitioner was not entitled to dependency deductions for Judy's two children for the taxable year 1963.

*Decisions will be entered for the respondent.*