James M. Ross v. Commissioner.
Ross v. Commissioner
Docket No. 3865-69.
United States Tax Court
T.C. Memo 1972-122; 1972 Tax Ct. Memo LEXIS 136; 31 T.C.M. (CCH) 488; T.C.M. (RIA) 72122; May 25, 1972
Joseph P. Pike, for the petitioner. Christopher D. Rhodes, for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: Respondent determined deficiencies in petitioner's income tax as follows: Year
Deficiency
1964
$ 444.14
1965
559.55
1966
1,163.54
The issues presented for our consideration are: (1) whether petitioner is entitled to deduct the amounts claimed as alimony for the *138 years 1964 through 1966, inclusive; (2) whether petitioner is entitled to file joint returns with Leta Wiseman Ross for the taxable years involved herein. Resolution of this issue will determine whether petitioner is entitled to claim the dependency exemptions for Leta's parents for 1965 and 1966; (3) whether petitioner is entitled to medical deductions in the amount of $1,910.28 claimed for 1966; and (4) whether petitioner is entitled to moving expenses in the amount of $1,081.05 claimed for 1965. Findings of Fact Some of the facts have been stipulated and are so found and incorporated herein by this reference. James M. Ross, hereinafter sometimes called petitioner, at the date of the filing of the petition herein resided in Bradenburg, Kentucky. Petitioner timely filed a separate income tax return for the year 1964 with the district director of internal revenue for the district of Maryland, Baltimore, Maryland, and also timely filed a separate income tax return for the year 1965 with the district director of internal revenue for the district of Kentucky, Louisville, Kentucky. Petitioner timely filed a joint income tax return for the year 1966 with the district director *139 of internal revenue for the district of Kentucky, Louisville, Kentucky. On February 9, 1968, petitioner filed an amended income tax return for the year 1964. 489 On August 29, 1968, petitioner filed an amended income tax return for the year 1965. Issue 1. Alimony or Child Support Payments On August 31, 1960, petitioner and Eleanor Ross, his wife (at that time) entered into a separation agreement in the State of New York. This agreement required petitioner to pay his wife $200 a month alimony and $225 a month for child support. On October 3, 1960, a final divorce decree was issued by the Inferior Court in Equity, State of Alabama. The divorce decree ratified and confirmed the New York separation agreement of August 31, 1960. In 1962 Eleanor Ross initiated proceedings in the New York court under the Uniform Support for Minor's Law and proceedings were had thereunder in Washington, D.C. On April 29, 1963, the then District Court of General Sessions, Domestic Relations Branch, Washington, D.C. (now Superior Court of the District of Columbia), entered a consent order. The consent order required that petitioner pay his former wife $250 per month child support and $50 *140 per month on the "accrued arrearage due the plaintiff in the amount of $7,305." The consent order did not specifically mention alimony. After he agreed to and signed the consent order, petitioner made payments through the Onondaga County Children's Court, Syracuse, New York, in the following amounts: Year
Amount
1964
$3,500
1965
1,850
1966
2,850
Petitioner deducted as alimony $1,645 on his original 1964 return and $3,500 on an amended 1964 return filed in 1968. He deducted $750 as alimony on his original return for 1965 and $1,950 on an amended return which was also filed in 1968. Petitioner deducted as alimony $1,400 on his 1966 return. Respondent disallowed all of the aforementioned deductions as alimony. Issue 2. Joint Returns Prior to August 1962, Leta Wiseman was a widow living in Mount Ayr, Iowa. During 1962, in response to petitioner's proposal of marriage, Leta Wiseman came to Washington, D. C. Leta refused to marry petitioner, but agreed to live with him as husband and wife. Leta did not wish to become involved with him financially or on the record in a formal marriage ceremony as husband and wife. Both parties were legally capable at that *141 time of entering into the relationship she desired. On her arrival in Washington, the parties began cohabitation by agreement and agreed at that time to enter into a binding relationship as husband and wife. Petitioner and Leta worked at the same office in Washington, D.C., where petitioner introduced her as his fiancee. Outside of this office, they introduced each other as husband and wife. They consummated the marriage and have continued the relationship to date. During their cohabitation, Leta, for purposes of record, used an address that was different from the address used by petitioner. Leta timely filed separate income tax returns for the years 1964 and 1965. Petitioner and Leta decided to file joint returns for the years 1964, 1965, and 1966 as a way out of proposed adjustments made to petitioner's original 1964 and 1965 returns by respondent. Issue 3. Medical Expenses In 1965, the dependent parents of Leta were living in Mount Ayr, Iowa. Her father was 74 and her mother was 72. In September 1965 a tornado blew the parents' house away. Her father had terminal cancer at the time. Leta flew to Iowa to make arrangements for her ill father. She moved her parents into *142 a house which she owned in Mt. Ayr, Iowa. The house was too cold for her father and her mother could not shovel coal. Leta installed a gas furnace in the bedroom where the father was nursed at a cost of $600. The house had no lavatory on the floor which the father occupied. His cancer was in the lower part of his body and he could not climb the stairs. Leta installed a lavatory on the first floor in a small closet space at a cost of $200. The father's bed linens had to be washed every day and there was no commercial laundry in the town. Leta's mother was unable to do the laundry without a washer. Leta expended $200 for a washer to enable the mother to provide clean sheets. The following table sets forth the medical deductions taken by petitioner on his joint income tax return for 1966: 490 1.
Total cost, medicine, drugs (tax- payer only)
$ 89.27
2.
1% line 9, page 1
119.02
3.
Deductible portion of medicines
4.
Other medical expenses:
(a) Jewish Hospital, Lou., Ky. - husband
349.97
(b) Ringhold Co., Hospital, Mt. Ayr. Iowa - father
650.00
(c) Surgeons and doctors - hus- band
326.50
(d) Doctors and medicines - father
200.00
(e) Nursing care - father
1,125.00
(f) Orthopedic braces - husband
153.97
(g) Health insurance premiums - total 441.64
$3,247.08
Less amount recovered from insurance 969.47
Total medical expense
$2,277.61
*143 Petitioner's claimed deduction of $1,125 labeled on his return as "Nursing Care - Father - $1,125" was expended for the following items: Air fare and mileage to Mount Ayr, Iowa
$125
Lavatory
200
Washing machine
200
Furnace
600
The expenditures for a washing machine, furnace, and lavatory were not made pursuant to a doctor's advice. Issue 4. Moving Expenses On July 19, 1965, petitioner moved his residence from Arlington, Virginia, to Fort Knox, Kentucky. Petitioner received from his employer the sum of $446.09 as reimbursement for moving expenses. On September 20, 1965, petitioner moved to a different residence in the Fort Knox, Kentucky, area. Petitioner listed as moving expenses the following items: As
As
Costs
filed
amended
Movement - HH goods
$422.01
$ 422.01
Travel POV
50.88
50.88
Per diem allowance
36.00
36.00
To break lease
175.00
175.00
Expenses, re "Claim"
124.00
124.00
2nd move, 9/20/65
0
86.00
Temp. qtrs. & subsistence from 7/19/65 to 9/20/65
0
433.25
Miscellaneous expenses 0
200.00
Total costs
$807.89
$1,527.14
Reimbursements
Household goods
$359.21
$ 359.21
Travel POV
50.88
50.88
Per diem 36.00
36.00
Total reimbursements $446.09
$ 446.09
Net amount deducted
361.80
1,081.05
*144 Ultimate Findings of Fact Petitioner is entitled to an alimony deduction for the year 1964 in the sum of $500. Petitioner is entitled to file joint returns with Leta Wiseman Ross during the taxable years involved. Petitioner is not entitled to deduct medical expenses for the year 1966 in an amount greater than allowed by respondent. Petitioner did not incur deductible moving expenses in an amount greater than the reimbursement he received from his employer. Opinion Issue 1. Alimony or Child Support Payments During the taxable years 1964, 1965, and 1966 petitioner made payments to his former wife at the Onondaga County Children's Court, Syracuse, New York, in the respective amounts of $3,500, $1,850, and $2,850. Respondent disallowed the aforementioned deductions as alimony on the ground that the entire amounts paid to his former wife represented payments in support of his minor children and since the payments are not includable in his former wife's gross income under section 71[1] of 491 the 1954 Code, petitioner is not entitled to a deduction under section 215. [2]
*145 The record shows that on August 31, 1960, petitioner and his wife entered into an agreement which required petitioner to pay his wife $200 a month alimony and $225 a month child support. On October 3, 1960, a final divorce decree was issued by the Inferior Court in Equity, State of Alabama, which ratified the August 31 agreement. On April 29, 1963, the then District Court of General Sessions, Domestic Relations Branch, entered a consent order requiring petitioner to pay his former wife $250 per month for child support and $50 per month for "accrued arrearage support" due her in the amount of $7,305. Petitioner treated the amounts paid under this Court order on his tax return as a proportional decrease of the amounts due under the Alabama judgment for child maintenance and support of his former wife. The petitioner claimed the wife's maintenance reduced percentage as alimony deduction. Petitioner now concedes that his method of allocation was incorrect and urges that he should be allowed alimony deduction in the years 1964, 1965, and 1966 to the extent that sums paid within those years exceeded the amount he was required to pay for child maintenance in each year as provided in the *146 original separation agreement made a part of the Alabama divorce judgment. Respondent determined, pursuant to the consent order, that petitioner was required to pay his former wife a total of $300 a month for child support ($250 current plus $50 arrearage). The monthly total amounts to $3,600 per year. Petitioner did not pay his former wife that large a sum in any of the years in question. Respondent determined that the entire payments made by petitioner to his former wife are child support within the purview of section 71(b) and section 1.71-1(e), Income Tax Regs. The issue to be resolved is what portion, if any, of the amounts in controversy is alimony and what portion is child support. In Commissioner v. Lester, 366 U.S. 299 (1961), the Supreme Court construed section 71(b), supra, by saying that the husband should receive a deduction for any periodic payment to the wife not specifically earmarked by the decree or instrument as payable for the support of children. In this connection, the Supreme Court stated that "the allocations to child support * * * must be 'specifically designated' and not left to determination by inference or conjecture." [3] Here, the consent *147 order of the then District of Columbia Court of General Sessions specifically designated that petitioner was to pay for the "support of the minor children" $250 per month and $50 per month on the accrued arrearage due the plaintiff." The consent order was approved and executed by petitioner and his attorney. Since the instrument fixed the payment of $250 as child support, we believe that the language of section 71(b) is satisfied, and the payments made during the taxable years involved for support of petitioner's minor children are accordingly not deductible by him. Chester L. Tinsman, 47 T.C. 560, 564 (1967); Cleveland J. Harris, 51 T.C. 980, 985 (1969). Examination of the consent order entered by the Washington, D.C., Court indicates clearly that petitioner was required to pay $50 per month on the accrued arrearage due his former wife in the amount of $7,305, and we are convinced that this provision was concerned exclusively *148 with the delinquent alimony which petitioner owed to her. Petitioner made payments to his former wife during 1964, 1965, and 1966 in the respective amounts of $3,500, $1,850, and $2,850. Accordingly, we hold that petitioner is entitled to deduct as alimony the amount of $500 in 1964; and the balance of such payments are nondeductible. Sec. 71(b), supra. We reject petitioner's contention that the Washington, D.C., consent order is null and did not affect his obligation to pay child support. It is petitioner's position that Section 30-319, Title 30 - Domestic Relations, District of Columbia Code [4] does not give the then District of Columbia 492 Court of General Sessions any authority to supersede the Alabama judgment, and hence all sums paid by petitioner to his former wife must necessarily be viewed as payments under the Alabama judgment. We disagree. Petitioner has made numerous payments to the Washington, D.C., Court after he and his attorney signed the consent order. There is no evidence that petitioner contested the jurisdiction of the Washington, D.C., Court during the proceeding or has contested it prior to this time. Nor does the record contain any information to siupport *149 petitioner's contention that the Washington, D.C., Court did not have jurisdiction over him. Assuming that the facts of record support such a contention, we do not believe that the instant proceeding is the proper vehicle for petitioner to assert that the Washington, D.C., Court lacked jurisdiction over him. Issue 2. Joint Returns Petitioner filed joint returns with Leta Wiseman Ross for the taxable year 1966 and in 1968 filed amended joint returns for the taxable years 1964 and 1965 under section 6013 of the 1954 Code. [5] Petitioner, as a basis for the right to file joint returns, contends that he entered *150 into a commonlaw marriage with Leta during 1962 in Washington, D.C. Respondent, in opposition, contends that the parties did not consummate such a relationship in Washington, D.C., and determined the deficiency herein based upon a single status of petitioner for each of the years involved. Accordingly, respondent determined that (a) the dependency exemptions petitioner claimed on his return of $600 each for Leta and her parents, O. B. Davis and Hazel Davis, are not allowable; (b) that Leta's income in the amount of $824 in 1966 is not includable in his gross income for that year; and (c) that the allowable deduction for medical and dental expenses for the year 1966 is $10.26 in accordance with section 213; and disallowed $1,910.08 claimed on his return as medical expense deduction. For the purpose of establishing eligibility to file a joint Federal income tax return, the marital status of the two individuals *151 involved is to be determined under the laws of the state of their residence. This position of the Internal Revenue Service with respect to a common-law marriage is equally applicable in the case of taxpayers who enter into a common-law marriage in a state which recognizes such relationship and who later move into a state in which a ceremony is required to initiate the marital relationship. See Rev. Rul. 58-66, 1958-1 C.B. 60; Alfred L. Von Tersch, Jr., 47 T.C. 415, 419 (1967). There is no statute in Washington, D.C., on the subject of common-law marriage. However, it is now settled that common-law marriages are recognized as lawful in the District of Columbia. McCoy v. District of Columbia, 56 A. 2d 908, at page 909. The testimony of petitioner and Leta, which we find to be credible, shows that Leta went to Washington, D.C., in 1962 in response to petitioner's proposal of marriage, and on her arrival the parties began cohabitation by agreement and agreed in praesenti to enter into a legally binding relationship as husband and wife in good faith. Leta told petitioner that she would live with him "as man and wife without standing up in front *152 of a preacher." They did, in fact, by express agreement, cohabit, introduced each other in public as husband and wife, consummated the marriage, and have continued the relationship to date. United States Fidelity & Guaranty Co. v. Britton, 269 F. 2d 249, 251-252 (C.A.D.C. 1959); Alfred L. Von Tersch, supra. In view of the foregoing and the record as a whole, we hold that the relationship which the parties established in Washington, D.C., during 1962 created a legitimate marital status under section 6013, supra, which entitled petitioner to file joint returns for the taxable to filed joint returns 1966 with his wife, Leta. Issue 3. Medical Expenses Respondent determined that since petitioner was not entitled to file a joint return 493 with Leta and that her parents did not qualify as his dependents, the allowable deduction for medical and dental expenses for the year 1966 is $10.26 under section 213 of the 1954 Code, [6] and disallowed $1,910.28 claimed as medical expense deduction. Respondent concedes that O. B. Davis and his wife are dependents of Leta and that all of the expenditures claimed as medical expenses for the year 1966 were substantiated. *153 In view of our conclusion with respect to Issue 2. Joint Returns and respondent's concession on brief, we hold that petitioner is entitled to claim Leta's father as a dependent on his joint return for 1966 and hence that item (b) Ringhold County Hospital, Mount Ayr, Iowa-Father-$650 and (d) Doctors and Medicine-Father-$200 claimed on petitioner's return for that year are allowable medical expense deductions. Respondent disallowed the item identified on petitioner's 1966 return as (e) Nursing Care-Father-$1,125 on the grounds, inter alia, that these items have been improperly characterized as medical expenses. The aggregate amount of $1,125 was expended for Air Fare and Mileage to Mount Ayr, Iowa-$125; Lavatory-$200; Washing Machine-$200, and Furnace-$600. With respect to the *154 air fare and mileage to Mount Ayr, Iowa, petitioner avers that this item represented the cost of Leta flying home to care for her parents when the roof of their house was blown away in a storm. The $600 deduction claimed for a furnace was the cost of a gas furnace which replaced the coal furnace in a house owned by Leta and occupied by her parents. The $200 deduction claimed for a washing machine was the cost of installing an automatic washer in the house. The $200 deduction claimed for a lavatory was the cost of installing a lavatory in Leta's house. Although the items purchased tended to make the symptoms of O. B. Davis' ailment easier to bear, they certainly did not mitigate, treat, or prevent the disease itself. Petitioner admits that the expenditures in dispute were not made pursuant to the advice of a doctor. Moreover, petitioner has not directed our attention to any precedent for extending the scope of section 213, supra, to include items purchased for the convenience of the sick person. Nor is there any evidence before us which would indicate that these items would not have been convenient to Leta's parents if her father had not been ill. Further, there is nothing in the *155 record which suggests that the expenditures involved herein have not increased the value of the house. Indeed, the very nature of an automatic washer, gas furnace, and lavatory indicates that the value of a home would be increased by their installation. The law is well settled that expenditures which represent permanent improvements to property are not deductible as medical expenses. Frank S. Delp, 30 T.C. 1230, 1235 (1958). Accordingly, we sustain respondent as to this issue. Issue 4. Moving Expenses Petitioner received $446.09 from his employer during 1965 as reimbursement for moving from Washington, D.C., to a new principal place of work at Fort Knox, Kentucky. On his original return for 1965, petitioner reported moving expenses of $807.89 and on his amended return for that year the increased amount of $1,527.14, of which $1,081.05 was claimed as moving expenses for which he was not reimbursed. Respondent determined that petitioner did not incur moving expenses during 1965 in an amount greater than the reimbursements he received from his employer because the amount disallowed is nondeductible personal expense under section 262 of the 1954 Code. It is respondent's *156 position that the expenses in controversy are unsubstantiated, and in any event are not deductible as moving expenses under section 217 of the 1964 Revenue Act and the correlative regulations. [7]
*157 Petitioner on his original and amended returns deducted $422.01 as a cost of moving his household goods. Respondent concedes this sum, if actually expended, is deductible. It is clear, however, that this sum must first be applied against the reimbursement of $446.09 petitioner received from his employer. Also petitioner deducted $50.88 as travel by a personally-owned vehicle, and $36 as per diem allowance 494 for himself during the two days in travel. These amounts are the same amounts that petitioner was reimbursed by his employer. No evidence was introduced to substantiate that petitioner expended the exact per diem rate or the exact automobile expenses received. It is noteworthy that for the movement of household goods, in which the claimed expenditures exceeded the reimbursement, petitioner deducted the claimed expenditures. However, petitioner deducted the exact amount reimbursed for per diem allowance and travel by a personally-owned vehicle and apparently kept no record of the actual expenditure. Petitioner also deducted $124 as expenses for a "claim." Petitioner did not make such expenditure, but has deducted an amount to compensate him for a claim he has against the *158 moving company for carpeting erroneously left behind in the first move. We hold that this claim does not qualify under section 217, supra. Further, petitioner deducted $175 for breaking a lease. This deduction clearly does not come within the ambit of section 217 as it applied for the taxable year 1965. Sec. 1.217-1(b)(3), Income Tax Regs.
On his amended return, petitioner deducted $86 as the cost of a second move on September 20, 1965. Petitioner did not change jobs, but simply moved to another residence in the same general area in which he resided from July 19 to September 20, 1965. In our view, the second move over two months after the first is a nondeductible personal expense under the law as it applied to 1965. Sec. 1.217-1(a)(2), Income Tax Regs.
Petitioner in his amended 1965 return also deducted $433.25 as a cost of "temporary quarters and subsistence" for this 2-month period. Petitioner testified that this figure was not an actual expenditure but was the amount of per diem his employer would have paid him had he been receiving per diem. The per diem rate was based upon present rates rather than the rate he would have received in 1965. This claimed deduction, of course, *159 was not actually spent. Had it been spent, it still would not be a deductible item. Amounts deducted as the cost of temporary quarters and subsistence are not the expense of moving household goods, nor do they come under the definition of expenses of travel, since these expenses are restricted in nature. Sec. 1.217-1(b)(4), Income Tax Regs.
Also petitioner claimed a deduction of $200 as miscellaneous expenses which he allegedly incurred for cutting carpet, changing draperies, a new driver's license, new automobile plates, and an electrical deposit at his new place of work. We hold that these expenditures do not qualify as expenses of moving household goods or as a travel expense under the statute. This type of expense is clearly disallowed by section 1.217-1(b)(3), Income Tax Regs.
In light of the foregoing, we sustain respondent on the issue of moving expenses. Decision will be entered under Rule 50. 495 Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended. SEC. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS. (a) General Rule. - (1) Decree of Divorce or Separate Maintenance. - If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation. * * * (b) Payments to Support Minor Children. - Subsection (a) shall not apply to that part of any payment which the terms of the decree, instrument, or agreement fix, in terms of an amount of money or a part of the payment, as a sum which is payable for the support of minor children of the husband. For purposes of the preceding sentence, if any payment is less than the amount specified in the decree, instrument, or agreement, then so much of such payment as does not exceed the sum payable for support shall be considered a payment for such support. ↩
2. SEC. 215. ALIMONY, ETC., PAYMENTS. (a) General Rule. - In the case of a husband described in section 71, there shall be allowed as a deduction amounts includible under section 71 in the gross income of his wife, payment of which is made within the husband's taxable year. No deduction shall be allowed under the preceding sentence with respect to any payment if, by reason of section 71(d) or 682↩, the amount thereof is not includible in the husband's gross income.
3. The Supreme Court was there considering section 22(k) of the 1939 Code, but we find its language equally applicable here for that section is identical with section 71(b)↩ of the 1954 Code in all respects which are pertinent here.
4. Section 30-319, Title 30 - Domestic Relations, reads as follow: Application of payments - Crediting on account of other support orders. No order for support entered by the court in any proceeding arising under this chapter shall supersede any previous order of support entered in a divorce or separate maintenance action, or any other proceedings, but the amounts for a particular period paid pursuant to either order, when verifled, shall be credited against amounts accruing or accrued for the same period under both. (Pub. L. 85-94, sec. 19, 71 Stat. 288, July 10, 1957.)↩
5. SEC. 6013. JOINT RETURNS OF INCOME TAX BY HUSBAND AND WIFE. (a) Joint Returns. - A husband and wife may make a single return jointly of income taxes under subtitle A, even though one of the spouses has neither gross income nor deductions, except as provided below:↩
6. SEC. 213. MEDICAL, DENTAL EXPENSES. * * * (e) Definitions. - For purposes of this section - (1) The term "medical care" means amounts paid - (A) for the diagnosis, cure, mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure or function of the body, (B) for transportation primarily for and essential to medical care referred to in subparagraph (A) * * *↩
7. SEC. 217. MOVING EXPENSES. (a) Deduction Allowed. - There shall be allowed as a deduction moving expenses paid or incurred during the taxable year in connection with the commencement of work by the taxpayer as an employee or as a self-employed individual at a new principal place of work. (b) Definition of Moving Expenses. - (1) In general. - For purposes of this section, the term "moving expenses" means only the reasonable expenses - (A) of moving household goods and personal effects from the former residence to the new residence. (B) of traveling (including meals and lodging) from the former residence to the new place of residence, * * * (d) Rules for Application of Subsection (c) (2). - (1) Subsection (c)(2) shall not apply to any item to the extent that the taxpayer receives reimbursement or other expense allowance from his employer for such item. Income Tax Regs. Sec. 1.217-1(a)(2) Commencement of work. To be deductible, the moving expenses must be paid or incurred by the taxpayer in connection with the commencement of work by him at a new principal place of work * * * (b)(3) * * * Examples of items not deductible as moving expenses include, but are not limited to, storage charges (other than intransit), costs incurred in the acquisition of property, costs incurred and losses sustained in the disposition of property, penalties for breaking leases, mortgage penalties, expenses of refitting rugs or draperies, expenses of connecting or disconnecting utilities, losses sustained on the disposal of memberships in clubs, tuition fees, and similar items. (4) * * * Expenses of traveling do not include, for example: living or other expenses of the taxpayer and members of his household following their date of arrival at the new place of residence and while they are waiting to enter the new residence or waiting for their household goods to arrive; expenses in connection with house or apartment hunting * * *↩